Filed 2/19/14  P. v. Gathrite CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC ROSHELLE GATHRITE,<br><br>    Defendant and Appellant. | B245827<br><br>(Los Angeles County<br>Super. Ct. No. NA092327) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James B. Pierce, Judge.  Modified and, as modified, affirmed with directions.

Law Offices of Robert K. Steinberg and Robert K. Steinberg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tasha G. Timbadia, and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Eric Roshelle Gathrite appeals from the judgment entered following his conviction by jury on count 1 – assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) with personal infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)) and count 2 – battery with serious bodily injury (Pen. Code, § 243, subd. (d)) with court findings he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)), a prior serious felony conviction (Pen. Code, § 667, subd. (a)), and two prior felony convictions for which he served separate prison terms (Pen. Code, § 667.5, subd. (b)). The court sentenced appellant to prison for 14 years. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that about 2:30 p.m. on December 23, 2011, Ricky Moore was a parking attendant at a Long Beach parking lot. Moore testified as follows. Moore saw appellant hit appellant's girlfriend, Nichole Battieste. Appellant hit Battieste about five times while she was sitting in the driver's seat of a car. Moore yelled at appellant that Moore could not just sit by and watch appellant hit her. Appellant charged at Moore, saying " ' You don't know me.' " When appellant approached Moore, Moore grabbed appellant's hands because appellant was approaching like appellant was going to fight him.

Appellant, about a foot from Moore, told him " 'I'll whoop your ass if you keep on. You don't know who the fuck you fucking with.' " Appellant's fists were at his side but Moore thought appellant was ready to swing.

Oscar Contreras, another parking attendant, approached, stood behind Moore, and said, " 'Hey, you mess with him, you got to mess with me, man. What's going on?' " Contreras told appellant to back off and asked what was happening. Contreras and appellant argued and appellant threatened Contreras. Battieste began pulling appellant

2

back towards the car and repeatedly told him to stop arguing. Appellant then dragged Battieste about 25 to 30 feet to the car, threw her inside, and repeatedly hit her.

Contreras told appellant that he was a punk for hitting Battieste. Appellant removed his shirt. When appellant was removing his shirt, Contreras and appellant were exchanging words. Moore testified Contreras asked "something like, 'Why don't you pick on – you hit [a] woman. Why don't you hit a man.' " Appellant went after Contreras. Moore testified appellant chased Contreras "like I'm going to fuck you up now. I'm going to beat your ass now." Appellant chased Contreras across the street.

When Contreras saw appellant approaching, Contreras turned around and began backpedaling away from appellant. Contreras was too busy backpedaling to put his hands up. Moore also testified Contreras lifted his open hands to protect himself. Contreras, about a foot from appellant, fell, then stood. When he stood, he did not stand erect, did not adopt a fighting stance, and did not protect himself. Appellant punched Contreras in the face, knocking him unconscious. Contreras was still unconscious 20 minutes later when an ambulance took him away. During cross-examination, Moore testified appellant had his hands up in a fighting position after Contreras and appellant began arguing.

Contreras testified as follows. Contreras saw appellant standing inches from Moore. Contreras ran to help Moore. Moore told Contreras what had happened, and Contreras saw appellant hit Battieste, who was outside the car, three times in the face. Moore grabbed appellant's hands because appellant was "in [Moore's] face" again. Moore had various physical injuries and a back problem. Contreras thought that if the situation escalated after Moore grabbed appellant's hands, Moore would not be able to defend himself.

Contreras told appellant that he was a punk for hitting a woman. Contreras said this to defend Battieste by diverting appellant's attention to Contreras. Contreras also said this to divert appellant's attention from Moore to Contreras. After Contreras told appellant that he was punk for hitting a woman, appellant became enraged and tried to get

3

him. Appellant told Contreras to stay out of his business, Contreras was " 'not going to be able to walk in this town,' " and Contreras did not know who appellant was. Appellant broke free from Moore and tried to get Contreras. Battieste grabbed appellant's T-shirt, appellant broke free from her grasp, then appellant took off the T-shirt.

Appellant began approaching Contreras and Contreras backed into the street. Contreras was backpedaling because appellant was running towards Contreras. When Contreras reached the middle of the street, appellant threw a few punches at him. Contreras dodged the punches, tried to hit back, but did not strike appellant. The two were fighting but punches were not landing. Contreras tripped and fell. Appellant tried to get on top of Contreras but Contreras kicked appellant off. When Contreras tried to stand, appellant punched him in the face, knocking him unconscious. Contreras suffered a skull fracture, a broken nose, and three cuts on his face.

2. *Defense Evidence.*

In defense, Battieste testified as follows. Battieste was appellant's fiancée. Appellant banged on the car window because Battieste was inside searching through his cell phone. Battieste denied appellant hit her. An African-American man approached the car and said something to a Hispanic man. The Hispanic man approached the car and began fighting appellant, and appellant fought back. Based only on the fact the Hispanic man approached the car, Battieste believed the Hispanic man started the fight. The Hispanic man threw a few punches, striking appellant at least once. Appellant also struck the Hispanic man a few times. Each man hit the other and each fell and hit his head on concrete. A police officer who arrived at the scene testified he saw no marks or bruises on Battieste.

***ISSUES***

Appellant claims (1) he was denied effective assistance of counsel by his trial counsel's failure to argue principles pertaining to mutual combat, (2) the offenses alleged in counts 1 and 2 were a single offense and multiple punishment on both counts violated

4

Penal Code section 654, (3) there was insufficient evidence supporting his convictions, and (4) appellant's sentence constituted cruel and unusual punishment.

## DISCUSSION

1. *Appellant Was Not Denied Effective Assistance of Counsel.*

    a. *Pertinent Facts.*

During jury argument, appellant's counsel did not argue principles pertaining to mutual combat but argued when appellant fought Contreras, appellant was exercising his right of self-defense. The court later instructed the jury on the present offenses and on the right of self-defense. The court, using a modified CALCRIM No. 3471,[1] also instructed on the right of self-defense in connection with mutual combat.

    b. *Analysis.*

Appellant claims he was denied effective assistance of counsel because his trial counsel failed to argue to the jury the principles of mutual combat discussed in the modified CALCRIM No. 3471. Appellant argues Moore battered him by grabbing his hands, Contreras later assaulted appellant by saying "you mess with my homey, you mess with me," and Contreras admitted taking swings at appellant. Appellant also argues he "attempted to withdraw from the battery committed against him by Mr. Moore by trying

---

[1] The modified instruction, entitled "right to self-defense: mutual combat or initial aggressor," (capitalization omitted) read: "A person who engages in mutual combat or who starts a fight has a right to self-defense, only if: [¶] '1. He actually and in good faith tried to . . . stop fighting; and [¶] '2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand that he wanted to stop fighting and that he had stopped fighting; and [¶] '3. He gave his opponent a chance to stop fighting. [¶] 'If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] 'However, if the defendant used only nondeadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent or give the opponent a chance to stop fighting. [¶] 'A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

to free himself and then [appellant] engaged in combat with Mr. Contreras who threatened [appellant] with an assault putting him in immediate danger and fear." Appellant further argues when Contreras made threatening statements to him, "it was reasonable for appellant to protect himself from a threat to run after Mr. Contreras and begin to fight." (*Sic.*)

The record sheds no light on why appellant's trial counsel failed to act in the manner challenged, the record does not reflect said counsel was asked for an explanation and failed to provide one, and we cannot say there simply could have been no satisfactory explanation. We reject appellant's ineffective assistance claim. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1219; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Moreover, there were satisfactory explanations why appellant's trial counsel might have failed to argue the principles of mutual combat in the modified CALCRIM No. 3471. Appellant's trial counsel reasonably could have concluded as follows. First, mutual combat occurs only when the parties fight pursuant to a preexisting agreement to fight. (See fn. 1, *ante.*) Based on the People's evidence, there was no preexisting agreement between appellant and Contreras to fight, and appellant simply assaulted Contreras. Based on Battieste's testimony (which the jury was not obligated to believe in any event) there was no preexisting agreement to fight; Contreras simply assaulted appellant. Based on the evidence in this case, any effort by appellant's trial counsel to argue to the jury that appellant and Contreras fought pursuant to a preexisting agreement to fight would have been unsuccessful.

Second, even if the fight between Contreras and appellant constituted mutual combat, that fact without more did not give appellant a right to self-defense. (See fn. 1, *ante.*) Outside the rules of sports, the mere fact parties engage in mutual combat, i.e., fight pursuant to a preexisting agreement to fight, simply means both parties are guilty of assault. (See *People v. Lucky* (1988) 45 Cal.3d 259, 291.) For this additional reason, any effort by appellant's trial counsel merely to argue to the jury that appellant and Contreras engaged in mutual combat would have been unsuccessful.

Third, assuming arguendo appellant engaged in mutual combat, we note he would have had a right to self-defense on the facts in this case only if he had fulfilled the three enumerated requirements in CALCRIM No. 3471. They required, generally speaking, that appellant (1) try to stop fighting, (2) communicate he had stopped, and (3) give Contreras a chance to stop fighting (see fn. 1, *ante*). However, according to Contreras, for example, appellant ultimately was chasing Contreras, and Contreras did any fighting while he was retreating from appellant. Based on all the evidence in this case, and even assuming appellant and Contreras initially engaged in mutual combat, appellant's trial counsel reasonably could have refrained from arguing the principles of mutual combat in CALCRIM No. 3471 because appellant had not satisfied the three requirements enumerated therein which, if satisfied, would have permitted him to exercise a right of self-defense.

Finally, the jury heard the evidence, is presumed to have understood and followed the court's instructions (*People v. Sanchez* (2001) 26 Cal.4th 834, 852) including CALCRIM No. 3471, and could have applied that instruction to exculpate appellant if the jury had wanted to do so. Appellant was not denied effective assistance of counsel.

2. *Multiple Convictions Were Proper But Multiple Punishments Were Barred.*

   a. *Pertinent Facts.*

The reporter's transcript reflects as follows. On October 19, 2012, after the court denied appellant's *Romero*[2] motion, the court sentenced appellant to prison for 14 years, consisting of six years for assault with force likely to produce great bodily injury (count 1) (representing the three-year middle term, doubled pursuant to the Three Strikes law), with a consecutive three-year term pursuant to Penal Code section 12022.7, subdivision (a), plus five years pursuant to Penal Code section 667, subdivision (a). The court struck the two one-year Penal Code section 667.5, subdivision (b) enhancements.

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

7

As to appellant's conviction for battery with serious bodily injury (count 2), the court later stated, "And count two, as far as I'm concerned, that runs concurrent with it. It's mid-term, all the same reasons I gave before. There's no additional time for that." The minute order pertaining to the October 19, 2012 sentencing hearing, and the abstract of judgment, reflect the court, as to count 2, imposed a middle term and stayed it pursuant to Penal Code section 654.[3]

b. *Analysis.*

Appellant claims multiple convictions on counts 1 and 2 were improper because assault with force likely to produce great bodily injury (count 1) is a lesser included offense of battery with serious bodily injury (count 2). We reject the claim. Assault with force likely to produce great bodily injury is not a lesser included offense of battery with serious bodily injury. (*People v. Sloan* (2007) 42 Cal.4th 110, 119-120.)

Appellant claims multiple punishment on counts 1 and 2 violated Penal Code section 654. The threshold question is whether, as respondent claims, the trial court already concluded Penal Code section 654 barred multiple punishment on counts 1 and 2. As indicated, the reporter's transcript of the October 19, 2012 sentencing hearing reflects the trial court orally imposed concurrent terms on counts 1 and 2, while the minute order and abstract of judgment reflect the court imposed a three-year middle term and stayed it pursuant to Penal Code section 654. We conclude the reporter's transcript prevails (cf. *People v. Smith* (1983) 33 Cal.3d 596, 599; *People v. Mesa* (1975) 14 Cal.3d 466, 471) with the result the record reflects the trial court imposed concurrent terms on counts 1 and 2 and did not apply Penal Code section 654.

---

[3]     Said minute order and abstract of judgment also reflect as to count 1 the court imposed a prison sentence of 14 years, including (1) a three-year middle term for the offense (not a six-year term pursuant to the Three Strikes law as the court orally pronounced) and (2) a *three*-year term under Penal Code section 667.5, subdivision (b) (although the court orally stated it was striking *two one*-year terms under that subdivision).

We asked for supplemental briefing on issues pertaining to Penal Code section 654, appellant's sentence on count 2, and the sentencing minute order and abstract of judgment. Having considered the supplemental letter briefs, we conclude as follows.

The parties concede appellant's sentence on count 2 must be stayed pursuant to Penal Code section 654. We accept the concession. (Cf. *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.) We will modify the judgment accordingly. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469-1472.)

The parties concede appellant's sentence for battery with serious bodily injury (count 2) must be doubled pursuant to the Three Strikes law. We accept the concession. (Pen. Code, § 667, subd. (e)(1).) Appellant's sentence for battery with serious bodily injury should have been six years (the three-year middle term, doubled pursuant to the Three Strikes law); therefore, we will modify the judgment accordingly.

The parties concede that since the trial court already imposed a five-year enhancement based on the jury's true finding as to the Penal Code section 667, subdivision (a) allegation, no additional enhancement under that subdivision is permitted. We accept the concession. (*People v. Williams* (2004) 34 Cal.4th 397, 402.)

Finally, as to count 1, the trial court must amend the minute order pertaining to the October 12, 2012 sentencing hearing, and the abstract of judgment, to conform to the trial court's oral pronouncement of sentence on that count, including the trial court's disposition of the Penal Code section 667.5, subdivision (b) enhancements (see fn. 3, *ante*). (Cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466; *People v. Solorzano* (1978) 84 Cal.App.3d 413, 415, 417.) The trial court must also amend said minute order and abstract of judgment to reflect appellant's sentence on count 2 as modified by this opinion.

3. *There Was Sufficient Evidence Supporting Appellant's Convictions.*

Appellant claims in a paragraph the facts do not support the jury's verdicts, i.e., there was insufficient evidence supporting his convictions. He argues in essence Moore and Contreras intervened in an argument between appellant and Battieste, during the

9

argument appellant allegedly hit her, but she was not injured and Moore and Contreras were "on the street looking for trouble." Appellant further argues his actions were "completely justified" because Moore grabbed appellant, Contreras threatened to fight appellant, and, in the end, appellant struck Contreras once. We reject the claim.

We have set forth the pertinent facts in our Factual Summary and have discussed them in connection with appellant's ineffective assistance claim. Based on the evidence, a jury reasonably could have concluded beyond a reasonable doubt Moore grabbed appellant's hands in self-defense because appellant assaulted him, and appellant later chased and assaulted Contreras with force likely to produce great bodily injury (count 1), knocking him unconscious and causing serious bodily injury (count 2). The evidence was sufficient to convince a rational trier of fact, beyond a reasonable doubt, appellant committed the offenses of which he was convicted. (See *People v. Williams* (2001) 26 Cal.4th 779, 790; *Ochoa, supra*, 6 Cal.4th at p. 1206; Pen. Code, §§ 240, 243, subd. (d), 245, subd. (a)(1).)

4. *Appellant's Sentence Did Not Violate the Eighth Amendment.*

Appellant, in a single sentence without argument or citation to case authority, claims his 14-year prison sentence was cruel and unusual punishment proscribed by the Eighth Amendment. Appellant never objected on that ground below; therefore, he waived the issue. (Cf. *People v. Benson* (1990) 52 Cal.3d 754, 786, fn. 7; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) He also waived it by raising it in a perfunctory fashion here. (Cf. *People v. Jones* (1998) 17 Cal.4th 279, 305.) As to the merits, "Appellant has failed to show that this case and this defendant is that 'exquisite rarity' [citation], an instance of punishment which offends fundamental notions of human dignity or which shocks the conscience." (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1631.) No Eighth Amendment violation occurred.

### *DISPOSITION*

The judgment is modified by imposing, as to count 2, a prison sentence of six years for battery with serious bodily injury (the three-year middle term, doubled pursuant to the Three Strikes law), and by staying execution of appellant's sentence on count 2 pending completion of his sentence on count 1, such stay then to become permanent. As so modified, the judgment is affirmed. The trial court is directed to correct its minute order pertaining to the October 19, 2012 proceedings, and to forward to the Department of Corrections an amended abstract of judgment, consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

11