[No. C067498. Third Dist. Aug. 29, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN McCOY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

**COUNSEL**

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BUTZ, J.—A jury found defendant Alan McCoy guilty of a number of offenses that arose out of his attack on the mother of his children in her apartment. The only two of these pertinent to this appeal are burglary and violation of a restraining order. The trial court sentenced him to state prison, awarding conduct credits limited to 15 percent of his actual presentence custody. (Pen. Code, § 2933.1.)[1] Both defendant and his attorney filed notices of appeal.[2]

Defendant argues the trial court's response to an inquiry from the jury was prejudicially incomplete. He also contends the court erred in imposing sentence for the violation of the protective order because the jury did not necessarily find that it occurred on an occasion separate from the burglary and other remaining offenses (of which he argues it was an indivisible part). We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed through the lens of defendant's arguments, the focus in our factual account is narrow. Other than giving a thumbnail description of the victim's background with defendant, we are concerned only with the chronology of the night in question.

Although never married, the relationship of defendant and the victim dated back to 1993, and produced four children (born in 1995, 1996, 2001, and 2003). There had been many breakups over the years, too many for the victim to distinguish. Their life together was tempestuous, with alcohol-fed domestic violence on defendant's part.

In 2000 and 2006, the victim sought police intercession. After an incident in 2007 where defendant also attacked their eldest daughter when she sought to intercede on the victim's behalf, the couple never lived together again. When the victim returned after this incident with her children to pick up their belongings, defendant arrived; he struck the victim and damaged the residence and the victim's car. This led to defendant's prior conviction for

---

[1] Undesignated statutory references are to the Penal Code.

[2] Based on the conduct in the 2010 case, the court found him in violation of probation in *People v. McCoy* (Super. Ct. Sac. County, 2007, No. 07F05629) (the 2007 case), revoked his probation, and imposed a concurrent prison term. Neither of the notices of appeal includes that case number, nor does defendant raise any argument in connection with it, so we will not make any further reference to the 2007 case.

domestic violence. The victim obtained a restraining order against him in the criminal matter and in a proceeding in family court.

The victim began to drink heavily at this time. As a result of harassing the victim, defendant was jailed for violating the restraining order in 2008, obtaining early release on his one-year sentence.

Beginning in late 2009, the victim began communicating with defendant again in connection with his visitations with their youngest child, and by February 2010 they had resumed sexual relations with each other after defendant showed up on her doorstep with nowhere to stay. Defendant began to drink again, however, and the situation deteriorated quickly.

On the night of March 26, 2010, the victim left defendant at the apartment and met with deputies, who escorted her back to her apartment. Defendant abruptly opened the door as she attempted to unlock it, causing her to fall forward. Defendant was extremely angry, but immediately calmed down on seeing the deputies. In response to the prompting of the deputies, defendant agreed to leave. However, he forgot his backpack. The victim went to a motel for two nights to avoid defendant in the event he came back.

Defendant phoned the victim repeatedly about retrieving his backpack; she was not receptive about seeing him in person. He showed up uninvited at her apartment on the evening of March 30. She testified that defendant entered her apartment through the window after she had called her boyfriend and then passed out on the bed. She had been drinking tequila and citrus soda since the morning, and admitted this could have affected her ability to remember the chronology of events. Defendant began to attack her physically almost immediately, saying he was angry that she had summoned the deputies. At some point he broke her cell phone. He then had sexual relations with her against her will. Defendant spent the night with the victim and would not let her leave. On the following day, he went with her to an appointment, at which point she was able to call for assistance and have him arrested.

The victim did not recall making any calls to 911 on the night of the attack; while she did have a memory of calling 911 from the bathroom, she could not remember the day this happened. The agency's records, however, showed this was in fact the evening of March 30, when it received three calls from the victim at 9:41, 9:45, and 9:53 p.m., during which she said to the dispatchers that she was in the bathroom.[3] When deputies arrived at 10:02

---

[3] During the first call, she made reference to defendant having returned after "they" had come over "last"; she terminated the call when defendant began to pound on the bathroom door. The second was only a brief call in which she said defendant was going to break down

p.m., she did not appear to be injured, and deputies recalled that she told them (as they spoke with her at the door) that defendant was not there any longer.

At trial, she thought it was evident that defendant was in her apartment before the 911 calls, and believed the 911 calls took place before she passed out on the bed and he entered through the window. She could not recall the arrival of the deputies. However, she was sure that she had not been beaten or raped before making the 911 calls.

In a statement to deputies on March 31, the victim said defendant had come over to her apartment after talking to her on the phone. She also told them she had called for help while defendant was there but he left before deputies arrived; she then made the call to her boyfriend; and defendant later broke into her apartment through the window and attacked her.

## DISCUSSION

### I.   The Trial Court's Response to Jury's Inquiry[*]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### II.   Violation of the Protective Order and Section 654

To reiterate in brief, the victim recalled only an entry through the window, though the photographic evidence suggested a point of entry other than the window. The 911 calls (which the victim did *not* recall) necessarily indicated defendant's antecedent presence, during which he apparently had not yet assaulted her physically. Either defendant fled when the police arrived and then returned (at which time he committed the acts underlying his other convictions), or he was still somewhere inside when the victim spoke with police at the front door.

On this count, the prosecutor had argued only that any contact with the victim, regardless of her consent, was a violation. Defense counsel conceded defendant's guilt. The probation report recommended that the trial court could properly punish defendant for violating the protective order (notwithstanding section 654). It interpreted the evidence as showing defendant

---

the door. In the third, she said that she was sure that defendant was gone, and asked for the deputies to call her when they arrived so that she would know it was safe to come out.

[*]See footnote, *ante*, page 1333.

making an initial arrival, fleeing, and then making a second arrival. It thus concluded the initial arrival was separate from the course of events involving the other offenses. The trial court imposed a consecutive eight-month sentence for the offense based on this reading of the evidence.

██ Section 654 precludes multiple punishment where an act or course of conduct violates more than one criminal statute but a defendant has *only* a single intent and objective. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 [54 Cal.Rptr.2d 578].) In such circumstances, the court must impose but stay execution of sentence on all of the convictions arising out of the course of conduct except for the offense with the longest sentence. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466 [103 Cal.Rptr.3d 898].) On this issue, we review the court's explicit or implicit factual resolutions for substantial evidence. (*Liu, supra,* 46 Cal.App.4th at p. 1136; *People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32].) The failure of defendant to object on this basis in the trial court does not forfeit the issue on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

Defendant asserts the *jury* did not make a specific factual finding in connection with the count of violating a protective order that resolved the question of which of the two possibly separate arrivals were the basis for its verdict or, for that matter, the question of whether there were in fact two separate arrivals as opposed to a single arrival (after which defendant continuously remained in the apartment). He argues the trial court therefore could not make a finding independently that there were two arrivals and premise defendant's punishment on an earlier arrival being independent of the other offenses. Although the People argue to the contrary, they do not cite any authority on this specific issue.

Defendant cites *People v. Roberson* (1988) 198 Cal.App.3d 860 [244 Cal.Rptr. 51], in which a defendant had procured a child on a specific occasion for sexual relations with "three or four" men (*id.* at p. 865) and the trial court had imposed consecutive sentences for a count of procurement and a count of molestation, the latter of which was based on the defendant's vicarious liability (*id.* at p. 871). Because the jury did not make any express finding as to the identity of the particular person who had molested the child or for whom the defendant had procured the child,[5] *Roberson* found it was *possible* that it was the same person and therefore it would not affirm the

---

[5] The opinion does not contain any indication of any express factual findings on the part of the trial court in imposing sentence.

sentence "on the guess that the laborer who committed the lewd act . . . was a different laborer than the one for whom [the defendant] provided [the child]." (*Roberson*, at p. 872.) *Roberson* did not provide any authority in support of its conclusion, and *Roberson* has not been invoked on this point subsequently.

■ We do not believe this holding is a correct statement of the scope of a trial court's authority to make factual findings under section 654 in imposing sentence. *People v. Siko* (1988) 45 Cal.3d 820 [248 Cal.Rptr. 110, 755 P.2d 294] would not allow the People to posit an alternative factual basis (based on the evidence at trial) for two generic molestation convictions other than the two specific sex acts for which the jury had also convicted the defendant, and therefore held section 654 precluded punishment for the generic offenses as well. (*Siko, supra*, at pp. 825–826.) *Siko* noted the charging instrument and verdict both had specified the lewd conduct as consisting of the two specific sex offenses, and neither closing argument nor the instructions suggested any other basis for the molestation counts. (*Id.* at p. 826.) *Siko* is thus authority that where there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654. (Like the previous case, we have not found any subsequent case invoking this holding.) This circumscription of a trial court's sentencing authority under section 654, however, is not a line that the trial court crossed in the present case.

We have found three cases that involve the identification of the factual basis for a verdict for purposes of section 654 (none of which, again, have attracted any followers of their holdings). We briefly digest them.[6]

The defendant in *People v. Centers* (1999) 73 Cal.App.4th 84 [86 Cal.Rptr.2d 151] entered a house with a gun. Three people were inside. He

---

[6] A fourth case, *People v. Coelho* (2001) 89 Cal.App.4th 861 [107 Cal.Rptr.2d 729], extensively develops a methodology for identifying the factual basis of a verdict in the context of determining whether a recidivist provision for mandatory consecutive sentences is applicable. *Coelho* is premised on a defendant's right under the federal Constitution to a jury trial, concluding as a result that a sentencing court can rely *only* on the facts that actually were the basis for the jury's verdict. (*Coelho,* at p. 876; but see *In re Coley* (2012) 55 Cal.4th 524, 557, fn. 18 [146 Cal.Rptr.3d 382, 283 P.3d 1252] [suggesting *Coelho* analysis is inconsistent with *Oregon v. Ice* (2009) 555 U.S. 160 [172 L.Ed.2d 517, 129 S.Ct. 711]].) As the right does not apply to statutes that mitigate punishment, such as section 654 (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 269–271 [104 Cal.Rptr.2d 641]; cf. *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1228–1229 [65 Cal.Rptr.3d 177] [former § 667.61]), *Coelho* is not relevant to the present analysis. As for *Coelho*'s invocation of the "rule of lenity" where the factual basis for a verdict is unclear (89 Cal.App.4th at pp. 885–886), this is a "tie-breaking principle" of *statutory interpretation* (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1102, fn. 30 [103 Cal.Rptr.3d 767, 222 P.3d 214]) where evidence of *legislative intent* is in equipoise as to which of reasonable interpretations should prevail (*People v. Manzo* (2012) 53 Cal.4th 880, 889 [138 Cal.Rptr.3d 16, 270 P.3d 711]). Suffice it to say that *Coelho* does not provide authority for invoking this principle in the context of sentencing. Otherwise, it is simply the same holding as in *Roberson* dressed in a different garment, and it is not any more persuasive.

kidnapped one of them. The jury convicted him inter alia of kidnapping, and of a single count of burglary with a firearm use enhancement. (*Id.* at pp. 89, 90.) *Centers* noted that neither the information nor the verdicts specified a particular victim of the burglary and its firearm use enhancement. (*Id.* at pp. 100–101.) In that circumstance, "the trial court is entitled to make any necessary factual findings *not already made by the jury*" (*id.* at p. 101, italics added) and thus "could properly find multiple victims" (a finding for which there was substantial evidence) and impose punishment for the burglary and enhancement in connection with one of the occupants of the apartment as well as the kidnapping of the other (*Centers*, at pp. 101–102).

*People v. Bradley* (2003) 111 Cal.App.4th 765 [4 Cal.Rptr.3d 166] and *People v. Nguyen* (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40] both dealt with punishment of an accomplice for a robbery and an attempted murder in the course of the robbery. In *Nguyen*, the accomplice not only aided the commission of the robbery but also abetted the shooting of the victim (shouting words of encouragement). Because the verdicts "in no manner *foreclosed*" the conclusion that the accomplice had developed an independent purpose of shooting the victim, which the evidence supported, it was proper for the trial court to impose sentence on both convictions. (*Nguyen*, at pp. 189–190, italics added.) In *Bradley*, however, the shooting was prosecuted solely as a natural and probable consequence of the robbery (the only crime the accomplice apparently intended); given the theory of the instructions underlying the verdict and the absence of substantial evidence of an independent purpose, the trial court could not properly impose sentence on both under section 654. (*Bradley, supra*, 111 Cal.App.4th at pp. 767, 769–770, 772 [on this basis distinguishing *Nguyen*].)

■ The gist of these cases, contrary to the *Roberson* holding, is that in the absence of some circumstance "foreclosing" its sentencing discretion (as in *Siko* and *Bradley*), a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts. We think this is the better reasoned conclusion. After all, a court may even rely on facts underlying verdicts of *acquittal* in making sentencing choices. (*People v. Towne* (2008) 44 Cal.4th 63, 83–89 [78 Cal.Rptr.3d 530, 186 P.3d 10]; cf. *In re Coley, supra*, 55 Cal.4th at p. 554 [an evaluation of a sentence pursuant to the 8th Amend. of the federal Constitution may consider facts underlying verdict of acquittal].) We cannot discern any principled manner in which to distinguish between countenancing the use of facts that a jury *rejected* and the use of facts that may or may not have been the basis for a verdict. We therefore reject defendant's argument.

## DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Hoch, J., concurred.

On September 24, 2012, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 28, 2012, S205661.