Filed 11/13/13  P. v. Boudolf CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C072006 |
| Plaintiff and Respondent, | (Super. Ct. No. MF034133A) |
| v. | |
| LOUIS HENRY BOUDOLF III, | |
| Defendant and Appellant. | |

With respect to one victim, a jury found defendant Louis Henry Boudolf III guilty of assault with force likely to cause great bodily injury (in the course of which he inflicted great bodily injury) and dissuading a witness.  With respect to two other victims in a separate incident, it found him guilty of two counts of robbery inside a residence, two counts of assault with force likely to cause great bodily injury, and burglary.  The jury also found defendant guilty of transporting methamphetamine found on his person on his arrest.  The trial court sustained various recidivist allegations and sentenced defendant to state prison for 33 years four months.

1

Defendant argues the trial court erred in denying his motion for a mistrial after a witness referred to his status as a parolee. He maintains that the trial court should have stayed the two counts of assault and the burglary count pursuant to Penal Code section 654[1] that were part of the same incident as the two counts of residential robbery. He also contends the trial court did not make an informed exercise of its discretion when it imposed a consecutive sentence for witness dissuasion. Finally, defendant maintains the minute order and abstract of judgment must be corrected to reflect that in its oral rendition of judgment, the trial court imposed sentence on only two enhancements pursuant to section 667.5, not three. The People concede the three counts must be stayed under section 654, and the minute order and abstract are erroneous. We will modify the judgment, order correction of the minute order and abstract of judgment, and otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A. The First Incident*

One morning in early January 2012, James Castor (the first victim) went to the home of his sister, Dena Snearly, to make some minor repairs at her request. Snearly's two adult children and two grandsons also lived there. Snearly's daughter, Amy Ruttan, was Castor's niece and defendant's girlfriend. Castor was ordinarily at his sister's house every day. Castor, who did not like to be around defendant, had been talking with him in the kitchen after sending Ruttan's sons to school. As Castor turned to walk away, defendant suddenly began to punch him. Castor, bleeding from his mouth and face, fell to the ground. As Castor lay there, defendant said, "Clean up your fucking mess, get the hell out of here; if you go to the police, I'm going to kill you." Castor was terrified, because someone had told him that defendant had killed someone before. (The court

---

[1] Undesignated statutory references are to the Penal Code.

admonished the jury to consider this testimony only as it related to Castor's state of mind, and not for the truth of the matter asserted.) Castor walked to the nearby home of a friend, Robin Vaughn (who would become one of the victims in a second incident with defendant later that day). Castor was hospitalized for 13 days with a ruptured spleen, fractured ribs, and blood clots in his carotid artery. He told the police he was afraid to assist in the prosecution of defendant.

Castor's sister had called him that morning to find out how the repairs were progressing. He told her that he had been assaulted at her house by defendant and was badly injured. When she got home, her son showed her the bloodstains on the floor and a bloody rag in the garbage. Both her son and her daughter (defendant's girlfriend) appeared to be in great emotional distress. Snearly picked up Castor at Vaughn's home. As Snearly was driving him to the home of another relative, Castor told her that he had been talking with defendant, who apparently did not like what Castor said and began to beat him. Snearly did not like defendant and did not want him in her house or dating her daughter. Despite Snearly's requests, her daughter refused to cooperate with the prosecution of the assault on her uncle.

Ruttan testified that her uncle had actually arrived at the house late on the previous evening, when he drank a number of malt liquors. When she woke in the morning to check if her brother was getting her sons ready for school, Castor was still drinking. Defendant was asleep in her bed. Castor left at some point after she returned to her bedroom and fell back asleep. As far as she was aware, defendant never left her bedroom that morning. She did not hear any sort of argument, and did not see any signs of blood when she got out of bed later that morning. Ruttan was testifying voluntarily on behalf of defendant. In her conversations with defendant at the jail, they did not at any point discuss the fact that defendant had never left the bedroom on the morning of the assault.

3

### B. The Second Incident

Castor's friend Vaughn (one of the robbery victims) died before trial.[2] Defendant had been Vaughn's roommate for a month in 2011 before defendant "had gone back to jail." Shortly before midnight on the same day as the attack on Castor, Vaughn was sitting at the computer in his bedroom. His neighbor, John Reimer (the second robbery victim, who also knew Castor) was visiting. The doorbell rang and Reimer went to answer it. Defendant and another man were at the door to rob them.[3] The other robber walked past Reimer into the bedroom, and Reimer could hear the sound of punching. The other robber had attacked Vaughn from behind, who rolled onto the bed and watched as the robber took items from the desk. Defendant came into the room and frisked Vaughn's pockets for other valuables, but did not hit him. They took a cell phone, $600, keys, a denture, and compact discs from Vaughn.

As the other robber walked out of the bedroom, he began punching Reimer. The other robber also told defendant to kick Reimer's head. The robbers went through Reimer's pockets, taking his cell phone.

### C. The Arrest

Several days later, police received a phone call in response to a bulletin about cars connected with the incident, reporting that one of them had just picked up someone on the street outside the caller's home. The police caught up with the car; defendant was a passenger. Taking defendant into custody, the police found methamphetamine in his pocket, and Reimer's cell phone was one of three retrieved during the arrest (found on the floorboard on the passenger side).

---

[2] The court reporter read his testimony from the transcript of the preliminary hearing.

[3] Neither victim was able to identify the second robber in photo lineups. Reimer was not able to select defendant from a photo lineup including him.

4

When told he was a suspect in the residential robberies, defendant claimed to have been out of town on that date. He refused to identify anyone with whom he had been staying.

## DISCUSSION

### I. Denial of the Mistrial Motion Was Not an Abuse of Discretion

Despite the fact that the prosecutor had warned his witnesses not to mention anything about defendant's prior crimes, a police detective volunteered that he had told defendant he was in custody on "a parole violation warrant" and because a victim had identified him. Defense counsel did not notice the reference at the time, until the prosecutor called it to counsel's attention just before the lunch recess. However, defense counsel stated that he would not have made an objection in open court in order to avoid highlighting the reference to defendant's parole status.

After the lunch recess, defense counsel moved for a mistrial. The trial court thought that the detective's passing reference was unlikely to have caught the jury's attention, or to pose the risk of biasing the jury. It offered to give a limiting instruction to the jury to ignore that testimony. Defense counsel asked the court to address the issue later and the court agreed. Defendant revisited the issue as part of his motion for a new trial. The trial court reiterated, "I don't think it was highlighted. It was moved on very quickly. I don't even know that the jury may have . . . gotten it. There was no objection highlighting it. There was . . . no request for the . . . Court to issue an instruction after that had happened . . . ; I don't find that that would rise to the level of granting a new trial, especially in light of the evidence that was submitted against [defendant]." Defendant asserts the court's ruling on his mistrial motion was an abuse of discretion.

It is undisputed as a general proposition that "[t]he admission of other crimes is always a sensitive subject. Such unattractive history hardly enhances a defendant's

position before the trier of fact." (*People v. Powell* (1974) 40 Cal.App.3d 107, 155.) However, the extent to which there has been incurable prejudice to a defendant's right to a fair trial is a matter "requir[ing] a nuanced, fact-based analysis," the resolution of which is within a trial court's discretion. (*People v. Chatman* (2006) 38 Cal.4th 344, 369-370.) As we noted long ago, it is only in a case in which the evidence is closely balanced that prejudice appears (*People v. Stinson* (1963) 214 Cal.App.2d 476, 482-483), such as when the credibility of the witnesses and the defendant are the central issue (*People v. Allen* (1978) 77 Cal.App.3d 924, 935).

Castor's friend Vaughn—defendant's former roommate—placed defendant at the scene of the residential robberies. Neither defendant's girlfriend nor anyone else corroborated defendant's claim of being out of town at the time of the residential robberies. Reimer's cell phone was in defendant's possession at the time of his arrest. As a result, defendant's guilt of the offenses committed against Vaughn and Reimer cannot be considered a close question, and therefore the trial court did not abuse its discretion.

As for the assault of Castor, the defense was premised entirely on defendant's girlfriend whose bias in favor of defendant was evident, and whom counsel had to concede may have slept through the fight. Defense counsel nonetheless argued that parties unknown must have assaulted her uncle elsewhere for reasons unknown, because Ruttan testified that she did not see any signs of blood; Castor and her mother placed the blame on defendant rather than the actual party because her uncle was drunk and her mother did not like defendant. We do not find this theory on this evidence to present such closely matched questions of plausible credibility that the trial court's resolution of prejudice was unreasonable. We therefore reject this argument.

6

## II. Section 654 Requires a Stay of Three Counts

As noted, the convictions for robbery inside a residence (counts 4 & 5), two of the assault convictions (counts 6 & 7), and the burglary conviction (count 9) all arose out of the second incident. The court imposed consecutive sentences of eight months each for the assault convictions and a concurrent term for the burglary conviction, even though the prosecutor's sentencing memorandum indicated that section 654 precluded punishment on these counts. Defendant maintains that section 654 precludes any additional punishment for counts 6, 7, and 9.

"Section 654 precludes multiple punishment where an act or course of conduct violates more than one criminal statute but a defendant has *only* a single intent and objective." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338 (*McCoy*)). A defendant's failure to raise an objection on this basis in the trial court does not forfeit the issue on appeal. (*Ibid.*) As the People correctly concede, an assault committed to effect a robbery cannot be punished separately (*People v. Brown* (1989) 212 Cal.App.3d 1409, 1427) unless it occurs *after* seizure of the fruits of the robbery and pursuant to a separate intent (*In re Jesse F.* (1982) 137 Cal.App.3d 164, 171) or represents a degree of force in excess of that necessary to commit the robbery (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272). Similarly, a burglary committed to effect a robbery cannot be punished separately. (*People v. Hopkins* (1975) 44 Cal.App.3d 669, 677.)

We may uphold a trial court's implicit factual determinations in sentencing if supported by substantial evidence. (*McCoy*, *supra*, 208 Cal.App.4th at p. 1338.) No evidence exists for punishing either the entry constituting the burglary or the antecedent force used in connection with the assaults as independent crimes. Imposing a concurrent sentence for the burglary is still a violation of section 654; rather, a trial court must impose sentence but stay its execution. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) We

7

therefore will modify the sentence accordingly and direct the trial court to file a corrected abstract of judgment.

### III. The Trial Court Correctly Understood Its Discretion in Imposing a Consecutive Term

Section 1170.15 provides that *if* a trial court imposes a consecutive sentence for a conviction of dissuading a witness, it must be for a full middle term instead of the usual consecutive punishment of one-third of the middle term (i.e., § 1170.1, subd. (a)). In the present case, when the trial court imposed a consecutive sentence for the dissuasion count it stated, "the middle term of three years to run fully consecutive." When the prosecutor asserted "It has to be one-third," the court replied, "No, [section] 1170.15 mandates when it's forcible, it's midterm consecutive." Defendant argues we must remand because this affirmatively demonstrates that the trial court was unaware of its discretion to impose a concurrent sentence.

A trial court ordinarily has discretion to choose between imposing consecutive or concurrent terms in sentencing. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262.) However, a trial court's misunderstanding of the scope of its discretionary power is not an informed exercise of its discretion. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 803.) If the record affirmatively reflects such a misunderstanding, we must remand for a properly informed exercise of discretion (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228) unless it is not reasonably probable that a more favorable sentencing decision would result (*People v. Sanders* (1997) 52 Cal.App.4th 175, 178).

It is unclear from the exchange at sentencing whether the court thought the *length* of the consecutive term was mandatory (which is what the prosecutor was addressing) or the consecutive *nature* of the term. Even if the latter is the case, we disagree that remand is necessary.

8

The prosecutor had recommended the middle term on the principal count, and a stay of sentence on the enhancements for prior prison terms. However, the trial court in sentencing defendant mentioned his "terrible criminal record" and poor performance on probation and parole as an independent basis for denying probation, and selected the upper term for the principal count because "defendant has engaged in violent conduct that indicates a serious danger to society." It also imposed sentence for both prior prison terms. To threaten the victim of the principal count with death if he reported the crime to the police does not present any sort of circumstance in *mitigation* of defendant's violent conduct and risk to society, such that we could find it remotely conceivable that the trial court would choose to make it concurrent to the principal count on remand.

It is true the court (without explanation) imposed a concurrent term for the transportation count, contrary to the prosecutor's request for a consecutive sentence. But the court did not give any indication that this choice was motivated out of a desire to mitigate defendant's overall sentence. We therefore reject his argument.

### IV.  The Minute Order and Abstract Must Be Corrected

Both the minute order and the abstract of judgment reflect three enhancements for prior prison terms (§ 667.5, subd. (b)). This is an error; the trial court had sustained three of four such enhancements, but in imposing sentence struck one because it resulted from the same manslaughter conviction that was used to enhance defendant's sentence under section 667, subdivision (d). The People properly concede the error. We will direct the trial court to correct its minutes and make this additional correction to the abstract of judgment.

### DISPOSITION

The judgment is modified to reflect that execution of sentence on counts 6, 7, and 9 is stayed. As thus modified, the judgment is affirmed. The trial court shall prepare an

amended abstract of judgment reflecting both this modification and its imposition of only two enhancements for prior prison terms, and forward a certified copy to the Department of Corrections and Rehabilitation. The trial court is also directed to correct its minutes to reflect the imposition of only two enhancements for prior prison terms.


                                          BUTZ_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____HULL_____, J.