Filed 2/5/21  P. v. Wilson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for
publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073930 |
| v. | (Super.Ct.No. FVI1401938) |
| TONY EARNEST WILSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed in part; reversed in part with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Mary Katherine Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2015, a jury found defendant and appellant Tony Earnest Wilson guilty of kidnapping (Pen. Code, § 207, subd. (a))[1], torture (§ 206), and other crimes. The jury also found true the allegation that defendant inflicted great bodily injury on the victim in the commission of the kidnapping. (§ 12022.7, subd. (a).) In a prior appeal in this case, defendant asserted the trial court erred by not staying, pursuant to section 654, the sentences for the kidnapping and the associated great bodily injury (GBI) enhancement because they overlap with the torture. (*People v. Wilson* (Jan. 23, 2018, E064116) [nonpub. opn.] [2018 Cal.App. Unpub. LEXIS 523, *2].) This court reversed the kidnapping and GBI enhancement sentences to allow the trial court to resentence defendant and give a clear factual basis for its section 654 decisions. (*Wilson*, at pp. *21-23.)

The trial court resentenced defendant, and defendant has again appealed. Defendant raises two issues. First, defendant contends the trial court erred by not staying, pursuant to section 654, the sentence for his kidnapping conviction. Second, defendant asserts the one-year sentence for his prison prior (§ 667.5, subd. (b)) should be stricken. We reverse in part, affirm in part, and provide direction.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

A.     <u>DEFENDANT'S CRIMES</u>[2]

On May 11, 2014, the victim boarded a bus to visit his father. The victim exited the bus and walked toward his father's house. A car stopped next to the victim. The front and rear passenger side doors opened. Defendant and another man exited the car. The victim knew defendant because, in the past, the two had "gotten high" together and physically fought one another. Defendant was holding a revolver in his hand. Defendant said to the victim, " 'So you were looking for me in a black Lexus, huh?' " The victim responded, " 'What are you talking about?' " Defendant said "some girl told him that [the victim] was in a black Lexus with [five other people], and [they] all had guns and [they] were looking for [defendant] by name." Defendant pointed the gun at the victim. The victim denied that he had been looking for defendant.

Defendant waved the gun and told the victim, " 'Get in the car.' " The victim entered the backseat of the car. The victim sat behind defendant, who was in the passenger seat. Defendant turned around and struck the side of the victim's head with the butt of the gun. Two other men were also in the car with defendant and the victim. The group travelled to a house. Upon arriving at the house, the victim was pushed out of the car. Defendant pointed a gun at the victim and guided him into the house.

---

[2] The facts in this subsection are taken from our prior opinion in this case (*People v. Wilson*, *supra*, 2018 Cal.App. Unpub. LEXIS 523, *3-8). (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10 [an unpublished case may be cited for factual background purposes].)

The victim was pushed into a room, and then pushed onto the floor. Multiple people kicked and punched the victim. The victim was also struck with a gun. The people striking the victim repeatedly asked him, " 'Who were the other guys that were with you?' " Defendant kicked the victim and pointed a gun at him. After approximately five minutes, the beating stopped. The victim explained he had not been looking for defendant and did not know anyone who owned a black Lexus.

John Doe 1 (JD1) rang the doorbell at the house. Defendant, holding the gun, told the victim, " 'Go to the back room, or I'll shoot your ass right now.' " The victim moved to a back bedroom. JD1 entered the back bedroom holding a large knife. JD1 heated the tip of the knife with a cigarette lighter. JD1 held the heated knife tip to the victim's face, burning the victim's face, while defendant pointed a gun at the victim. JD1 accused the victim of stealing JD1's gun on a prior occasion.

After the victim was burned, someone took the gun away from defendant. Defendant picked up a flathead screwdriver that was approximately 18-inches long. Defendant attempted to stab the victim's stomach, but the victim moved. Defendant attempted to stab the victim's chest, but the victim used his hand to protect his chest. Defendant stabbed the victim's forearm with the screwdriver. The screwdriver almost, but did not, exit through the other side of the victim's forearm. Defendant pulled the screwdriver out of the victim's arm.

The victim began to faint. The attackers talked to one another about not letting the victim fall asleep because the victim likely suffered a concussion. The attackers gave the victim methamphetamine to stay awake, and the victim smoked it. The victim

was instructed to go into the backyard and pick-up dog feces. The victim spent approximately 90 minutes outside cleaning the backyard. When the victim finished cleaning the yard, defendant instructed the victim to return to the back bedroom. Defendant and another man smoked methamphetamine in the back bedroom. Throughout the night, defendant occasionally punched the victim and kicked the victim's face. Defendant continued pointing a gun at the victim.

The following morning, one of the men and defendant decided to find the woman who accused the victim. At approximately 8:00 or 9:00 a.m., defendant, the victim, and one of the attackers (the driver) left the house in order to confront the woman who had accused the victim. On the way, the driver asked the victim for $200. The driver drove to Radio Shack. The victim stole a $200 speaker and gave it to the driver. The driver went to a Dollar General store where the victim stole a $25 bedsheet.

The group travelled to a second house where the driver tried to sell the stolen speaker. While at the second house, defendant, the victim, and a man from inside the second house (John Doe 2 [JD2]) smoked marijuana. The driver went to a store with the gun defendant had been using. JD2 accused the victim of stealing JD2's pipe on a prior occasion. Defendant and JD2 instructed the victim to follow them across the street to a third house. The three entered the garage of the third house. Defendant and JD2 beat the victim. Defendant struck the victim's sides with a 4x4 piece of lumber with nails sticking out of it.

The victim ran out of the garage. Defendant tripped the victim. The victim fell in the street. Defendant and JD2 jumped on top of the victim. The three fought. The

victim stood up and ran. The victim flagged down a motorist who drove him away from the third house.

The victim suffered bruising around his forehead and eye; two small, puncture-type injuries on his face; a third puncture-type injury on his face; a possible burn injury on his face; a screwdriver-type stab wound on his arm, as well as bruising on his arm and bruising on his abdomen; a "puncture mark" and abrasion on his abdomen; and bruising on his scalp, along the side of his head.

B.     PRIOR APPEAL

In defendant's prior appeal in this case, he asserted the trial court erred by not staying the sentences for the kidnapping and the GBI enhancement associated with the kidnapping, pursuant to section 654, because they overlapped the torture conviction. (*People v. Wilson*, *supra*, 2018 Cal.App. Unpub. LEXIS at p. *2.) This court explained that it was unclear from the record "what act(s) form the basis for the GBI enhancement associated with the kidnapping." (*Id.* at p. *19.)

In regard to the distinction, if any, between the kidnapping and the torture, we explained that, at the sentencing hearing the trial court gave an incorrect timeline of the events in the case and the prosecutor provided an incorrect interpretation of the law related to kidnapping, which rendered the record unclear as to why the trial court believed the kidnapping was separate from the torture. (*People v. Wilson*, *supra*, 2018 Cal.App. Unpub. LEXIS at pp. *21-22.) This court reversed the sentences for defendant's kidnapping conviction and the associated GBI enhancement, so the trial

court could resentence defendant and give a clear factual basis for its sentencing decisions.  (*Id.* at pp. *23, 29-30.)

## C.    RESENTENCING

On October 11, 2019, the trial court resentenced defendant.  At the hearing, defendant argued that the torture started at the outset of the kidnapping, and the two formed one inseparable event.  The prosecutor argued that the torture occurred in the back room of the first house, and therefore could be separated from the ongoing kidnapping.  However, the prosecutor asserted that the GBI enhancement associated with the kidnapping conviction overlapped with the torture conviction, and therefore should be stayed pursuant to section 654.

The trial court said, "I will agree that the DA's argument is problematic; however, . . . I disagree with [defense counsel]."  Without stating its reasons or the factual basis for its decision, the trial court imposed a 16-year prison sentence for the kidnapping conviction, but, pursuant to section 654, stayed the GBI enhancement associated with the kidnapping conviction.  The trial court also imposed, but stayed, a one-year prison term for a prison prior (§ 667.5, subd. (b)).

## DISCUSSION

## A.    SECTION 654

Defendant contends the trial court erred by not staying the kidnapping sentence pursuant to section 654 because the kidnapping overlapped the torture.  In response, the People concede (1) the trial court created a seemingly contradictory sentence by not staying the sentence for the kidnapping while staying the GBI enhancement associated

with the kidnapping; and (2) the trial court did not "make any factual findings to support its decision." In defendant's reply brief, he asserts this court can determine from the trial record which acts comprise the torture and GBI enhancement. We are in the same position that we were in during defendant's first appeal: We do not have a clear factual basis for the trial court's sentencing decisions, and we have a seemingly contradictory sentence.

"Section 654, subdivision (a) provides, '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' ' " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " ' [Citation.] Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*People v. Jackson* (2016) 1 Cal.5th 269, 353-354.)

If "there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339 (*McCoy*).) For example, if the information and the verdict reflect that a lewd conduct conviction consists of " 'penetration of the vagina and rectum of the victim by the penis,' " then the trial court cannot rely on the defendant's

8

act of removing the victim's clothes as the act comprising the lewd conduct. (*People v. Siko* (1988) 45 Cal.3d 820, 825-826.) "[I]n the absence of some circumstance 'foreclosing' its sentencing discretion (as in *Siko* . . . ), a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*McCoy*, *supra*, 208 Cal.App.4th at p. 1340.)

In the instant case, neither the first amended information, the jury instructions, nor the verdicts suggest specific factual bases for the torture and GBI enhancement associated with the kidnapping. Therefore, the trial court was free to base its section 654 decision on any of the evidence presented at the trial. (*McCoy*, *supra*, 208 Cal.App.4th at p. 1340.) At the resentencing hearing, the trial court did not give a factual basis for its section 654 decisions. Additionally, the trial court said it found the prosecutor's argument to be problematic and that it disagreed with defense counsel's argument, so we cannot infer that the court adopted either party's argument.

Due to the lack of explicit factual findings, we look to the trial court's sentencing decisions to try to infer an implied factual finding. (See generally *People v. Osband* (1996) 13 Cal.4th 622, 730 [implicit findings can be reviewed].) " '[E]nhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on aspects of the criminal act that are not always present and that warrant additional punishment.' " (*People v. Wong* (2018) 27 Cal.App.5th 972, 983, italics omitted.) Or, to state it more bluntly, "[A]n enhancement and an underlying offense *always* involve the same act." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1137.) That means the GBI enhancement cannot be separated from the kidnapping.

9

(*People v. Ahmed* (2011) 53 Cal.4th 156, 164 ["the infliction of great bodily injury [was] part of the same physical act as the substantive crime itself"].)

A kidnapping is an ongoing offense that ends when the victim reaches a place of temporary safety. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1159.) For the GBI enhancement, the injury must be inflicted "in the commission" of the kidnapping. (§ 12022.7, subd. (a).) "In the commission" means at any point during the course of an ongoing offense. (*People v. Frausto* (2009) 180 Cal.App.4th 890, 901-903; see also *People v. Jones* (2001) 25 Cal.4th 98, 109-111.) Therefore, the GBI enhancement must pertain to an act that is part of the substantive offense of kidnapping.

When the trial court did not stay the kidnapping sentence but stayed the sentence for the associated GBI enhancement, it found that the complete kidnapping offense did not overlap another offense but that the GBI enhancement, which is part of the act of kidnapping, did overlap another offense (presumably the torture). It seems to us that either the kidnapping and its components, i.e., the associated GBI enhancement, are separate from the torture or they overlap the torture, but it cannot be that the substantive offense is separate from the torture while the enhancement overlaps the torture. Given the seeming contradiction in the trial court's section 654 decisions, we are unable to infer the factual basis for the trial court's decisions.

Defendant asserts this court can find a factual basis for the torture verdict from reading the trial record. Defendant asserts that upon reading the trial record, we will conclude that the jury could only find defendant guilty of torture by aggregating all of the assaultive incidents. We are not persuaded by this argument because (1) there is

nothing, e.g., a verdict form, indicating that the jury aggregated all of the assaultive incidents, which means the trial court was free to rely on any facts in making its section 654 decision (*McCoy*, *supra*, 208 Cal.App.4th at p. 1340); and (2) it is not our role to give the factual basis for the trial court's section 654 decisions. Our role is to review the trial court's decisions for substantial evidence. (*People v. Osband*, *supra*, 13 Cal.4th at p. 730 [section 654 decision is reviewed for substantial evidence].) Due to the seeming contradiction in the trial court's decisions and the lack of any explicit factual explanation for those decisions, we are unable to conduct a substantial evidence review at this time.

Next, defendant asserts the People are estopped from arguing that the torture and GBI enhancement involve separate acts or intents because they have previously argued that the two overlap. Defendant contends that, due to the People being bound by their previous concessions, "[t]he trial court has no role here." The trial court is not bound by the People's arguments when making section 654 decisions. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 500 ["The prosecutor's statements are not evidence, and they are not binding on the jury or the court."].) So, to the extent the People could be estopped from making certain arguments, the trial court would not be included in that estoppel. Therefore, we are still left in the position of not knowing the factual basis for the trial court's section 654 decisions, which prevents us from conducting a substantial evidence review.

In sum, in order to review the section 654 decision in this case we need to know the factual basis for the trial court's decision. The trial court did not explicitly state its

11

findings on the record. We are unable to infer the trial court's factual findings in this case due to the seemingly contradictory decisions involving the kidnapping sentence and the sentence for the GBI enhancement associated with the kidnapping, the trial court's rejection of defense counsel's argument, and the trial court's finding that the prosecutor's argument was problematic. Accordingly, we will reverse the sentence for the kidnapping conviction and the associated GBI enhancement, so the trial court may resentence defendant and identify the factual basis for its decision.

B.     <u>SECTION 667.5</u>

Defendant contends the one-year sentence for his prison prior (§ 667.5, subd. (b)) should be stricken because that law no longer applies to defendant's prior offense. The People did not respond to this issue.

Effective January 1, 2020, section 667.5, subdivision (b), was amended to read, "[T]he court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." Prior to January 1, 2020, a one-year prison term was mandatory for "each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170." (Prior § 667.5, subd. (b) [ver. eff. Jan 1, 2019].) In other words, the law has changed so that now, a one-year prison sentence may only be imposed when the prison prior was for a sexual offense. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)

The prior conviction underlying defendant's prison prior (§ 667.5, subd. (b)) consists of attempting to receive stolen property. (§ 664/496, subd. (a).) Because

12

defendant's prior conviction was not for a sexual offense, we conclude the stayed one-year prison term associated with the prior conviction enhancement (§ 667.5, subd. (b)) must be stricken.

## DISPOSITION

The sentence for the kidnapping conviction (§ 207, subd. (a)) (Count 1) and the great bodily injury enhancement (§ 12022.7, subd. (a)) associated with the kidnapping conviction (Count 1) are reversed. The trial court is directed to (1) resentence defendant for the kidnapping and associated great bodily injury enhancement, in Count 1, and expressly state a factual basis for any section 654 decision it makes during the resentencing; and (2) strike the sentence for the prior conviction enhancement (§ 667.5, subd. (b)). In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.


We concur:


CODRINGTON
J.


SLOUGH
J.

13