Filed 3/20/24  P. v. Salih CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081891 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE413415) |
| SEYIDXAN SALIH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed as modified.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Steve Oetting, Assistant Attorney General, and Evan Stele, Deputy Attorney General, for Plaintiff and Respondent.

Seyidxan Salih appeals from a judgment imposed after a jury convicted him of inflicting corporal injury resulting in a traumatic condition on his wife

(Pen. Code, § 273.5, subd. (a))[1] and misdemeanor violation of a protective order (§ 166, subd. (c)(1)). We reject Salih's claim of ineffective assistance of counsel but agree that the trial court violated section 654 by imposing concurrent sentences. Accordingly, we modify the judgment by staying the misdemeanor sentence on count two and affirm the judgment as so modified.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Domestic Violence Restraining Order*

In March 2022, the San Diego Superior Court issued a domestic violence restraining order preventing Salih from having any contact with his wife A.H. or coming within 100 yards of her. Salih was personally served with the order while in court and in the presence of a judicial officer.

B. *911 Call*

At 2:18 a.m. on June 21, 2022, A.H. called 911 from a Motel 6 in El Cajon to report that Salih had just attacked her and she needed medical assistance. When asked what happened, she initially told the dispatcher, "I can't talk right now ma'am, just please, I'm very shooken up." A.H. was panting and groaning on the call. She reported that Salih had attacked her, broken her phone, and "busted [her] mouth" by assaulting her with his hand in the parking lot. She said she blacked out from the blow, her tooth was loose, and she thought there was blood coming out of her ear. She reported that Salih drove off in a black car. An audiotape of the 911 call was played for the jury at trial.

C. *A.H.'s Statements to Police*

Officer W. responded to the call and arrived at the motel at 2:25 or 2:26 a.m. A.H. was "shaken up" and had a swollen upper lip, bloody gums and lower lip, loose tooth, and a swollen lump on her forehead and the side of

---

[1]  Unless otherwise indicated, statutory references are to the Penal Code.

2

her face. After the paramedics determined that her ear was not bleeding, A.H. explained she believed she had touched her mouth and then her ear.

A.H. reported that she and Salih were separated after three years of marriage. The incident occurred after she called Salih from her new phone to make arrangements for him to return an old phone of hers that was in his possession. When Salih met her at the motel, he walked up and immediately assaulted her with a closed fist between five and ten times. She briefly blacked out and saw stars, fell to the ground, then saw Salih run back to his car.

Officer W. found a necklace on the ground in the area where the assault had occurred. A.H. also handed him another similar piece of jewelry and said both belonged to Salih. She did not explain where the second piece of jewelry came from.

An ambulance arrived and took A.H. to the hospital. A.H. did not testify at trial.

D. *The Surveillance Video*

The police recovered a surveillance video from the Motel 6. The video showed A.H. standing outside the Motel 6 lobby at 2:16 a.m. A man walked up with a cigarette in his left hand and punched her in the face with his right fist before A.H. fell back. They were both out of view of the camera for about 10 seconds. While they were out of view, a black car backed up towards them and stopped in the parking lot. The man then walked back into view of the camera and got into the passenger side of the black car, which drove away. The video was played for the jury at trial.

Officer W. located a photograph of Salih in a records system and identified him in court. The assailant in the Motel 6 surveillance video appeared to be the same person.

3

E. *Criminal Proceedings*

The People charged Salih with inflicting corporal injury resulting in a traumatic condition on a spouse (Pen. Code, § 273.5, subd. (a)) and violating a protective order (Pen. Code, § 166, subd. (c)(1)). As to both counts, the information alleged the victim was a person defined in Family Code section 6211. It also alleged that Salih had previously been convicted of violating Penal Code section 273.5 within seven years of the charged offenses.

A jury convicted Salih on both counts and found true the allegations under Family Code section 6211. Salih admitted his prior conviction under Penal Code section 273.5.

The trial court sentenced Salih to five years in prison. The court imposed the midterm of four years for count one, a concurrent term of 364 days for count two, and a consecutive one-year term for a separate assault conviction after revocation of probation in another case.

DISCUSSION

I

Salih first argues that his attorney provided ineffective assistance of counsel by failing to object to the admission of A.H.'s statements to the police on the grounds that they constituted inadmissible hearsay and violated his right of confrontation under the Sixth Amendment. We disagree.

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Scott* (1997) 15 Cal.4th 1188, 1211 (*Scott*); *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).)

4

It is "particularly difficult to establish ineffective assistance of counsel on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*Scott, supra*, 15 Cal.4th at p. 1212.)

"The decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1335; see also *People v. Kelly* (1992) 1 Cal.4th 495, 540 ["An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel."].) This is so "even when there was a basis for objection." (*People v. Majors* (1998) 18 Cal.4th 385, 403.)

Even assuming a valid basis for objection, Salih has not established any deficient performance based on his counsel's failure to object to A.H.'s statements to the police. The record is silent as to defense counsel's reasons for failing to object, and this is not one of those rare instances in which there could be no conceivable tactical purpose. On the contrary, the record shows that defense counsel herself relied on A.H.'s statements to the police in attempting to raise doubts about A.H.'s credibility. Specifically, in closing argument, defense counsel cited A.H.'s statements to the police that (1) A.H. was the one who called Salih to make arrangements for him to return her old phone to her at a motel in the middle of the night—which defense counsel relied on to suggest that A.H. was not telling the full story about the incident; and (2) the two pieces of jewelry recovered from the scene belonged to Salih—

5

which defense counsel relied on to suggest that A.H. may have yanked the jewelry off him and there may have been a scuffle.[2]

We cannot second-guess defense counsel's tactical decision to make use of this evidence in Salih's defense, especially given the absence of any other defense evidence. The case against Salih was otherwise overwhelming, including A.H.'s account of the assault in her 911 call immediately after the incident, the surveillance video corroborating A.H.'s account and showing Salih assaulting her, the physical injuries A.H. sustained, and the stipulation regarding the domestic violence protective order. Defense counsel may have decided to make the best of a bad situation by attempting to use some of A.H.'s statements to the police to cast doubt on her version of events and at least raise a reasonable doubt. This would have been a rational tactical reason for not objecting to the admissibility of these statements. Thus, Salih cannot demonstrate deficient performance on this record. (See *People v. Bradford* (1997) 14 Cal.4th 1005, 1052 [reviewing court will find ineffective assistance of counsel "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission" (internal quotation marks omitted)].)

---

[2] Defense counsel referred to these facts several times in her closing argument. She also returned to them at the end of her closing argument as follows: "I ask you to think about the evidence we do have. The fact that she brought him there that night. She called him at 2:00 in the morning or whatever time it was that she stepped outside of that hotel knowingly, and she wasn't concerned. She wanted her phone. She wanted her other phone back. Why? Maybe she wanted to see him and talk about something. Something transpired before he jumped out. . . . [¶] She said, 'Come here,' and he did. Whatever transpired between the two of them, there was clearly an incident, but what transpired? Did she grab his chain and he jerked his head or her head during the scuffle? She fell and hit her face. I don't know and neither do you, and that is why you have to find him not guilty."

Likewise, Salih has not established the prejudice element of his ineffective assistance claim. The assault was caught on video and reported immediately. There was no dispute that Salih was the assailant depicted on the video. The video alone established that Salih "willfully inflict[ed] corporal injury" on A.H. (§ 273.5, subd. (a)), and her injuries easily met the statutory definition of a "traumatic condition." (§ 273.5, subd. (d) [defining "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury . . ., whether of a minor or serious nature, caused by a physical force"].) The video and 911 call also established that Salih committed a willful and knowing violation of the protective order by deliberately having contact with A.H. and coming within 100 yards of her. (§ 166, subd. (c)(1).) On this record, there is no reasonable probability the jury would have reached a different result without the admission of A.H.'s statements to the police. Even assuming any deficient performance by defense counsel, it did not cause prejudice "in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123, quoting *Strickland, supra*, 466 U.S. at p. 686.)

## II

Salih next argues that the trial court violated section 654 by imposing a 364-day concurrent sentence for the misdemeanor violation of a protective order in count two. We agree.

Section 654 prohibits multiple punishment for an "act or omission" that is punishable in different ways by different provisions of law. This restriction applies not only to a single act or omission, but also an indivisible "course of conduct" violating multiple provisions. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207–1209.) Whether a course of conduct is divisible for purposes of

7

section 654 depends on the intent and objective of the defendant. (*People v. Fuentes* (2022) 78 Cal.App.5th 670, 680 (*Fuentes*).) If multiple offenses were incident to a single objective, the defendant may be punished for no more than one. (*Ibid*.) However, a course of conduct divisible in time, though directed to only one objective, may give rise to multiple violations and punishment, particularly when the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

When section 654 applies, it "does not allow any multiple punishment, including either concurrent or consecutive sentences." (*People v. Deloza* (1998) 18 Cal.4th 585, 592.) If punishment for multiple offenses is prohibited by section 654, the court must impose sentence for one of the offenses and stay sentence on the others. (*Id*. at pp. 591–592.)

If the facts are undisputed, the application of section 654 raises a question of law subject to de novo review. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.) We review any express or implied factual findings underlying the trial court's ruling for substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Salih contends that section 654 bars the imposition of concurrent sentences for counts one and two because the infliction of corporal injury in count one (§ 273.5, subd. (a)) was based on the same physical act of punching A.H. as the violation of protective order in count two (§ 166, subd. (c)(1)). In response, however, the People assert substantial evidence supports the trial court's implied finding that these counts were divisible in time because Salih violated the protective order by talking to A.H. on the phone before the

8

assault. In reply, Salih argues that: (1) the prosecutor did not argue this theory at trial and only argued that Salih violated the protective order by assaulting A.H.; and (2) the phone call theory is not supported by the evidence.

We reject Salih's first argument against this theory of divisible acts. In applying section 654, the trial court was not constrained by the prosecutor's theories or the jury's verdict. In the absence of some circumstance foreclosing its sentencing discretion, a court may base its decision under section 654 on *any* facts in evidence, even those that may not have been the basis for the verdict. (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340.) If supported by the evidence, therefore, the trial court was not foreclosed from relying on the theory that Salih violated section 166, subdivision (c)(1) by talking to A.H. on the phone *before* he came over to the motel and assaulted her.

We agree with Salih, however, that the trial record does not support the theory he violated section 166, subdivision (c)(1) by talking to A.H. on the phone. Section 166, subdivision (c)(1) requires a "willful and knowing" violation of a protective order. According to the trial evidence, A.H. said that *she* called Salih from her new phone to get her old phone back. There was no evidence that Salih knew it was A.H. calling when he answered. Because they were separated, and A.H. was calling from a new phone, she may have had a new number that was unknown to Salih. In fact, A.H. was unable to provide her own cell number when asked on the 911 call. On this record, therefore, there is no substantial evidence that Salih willfully and knowingly violated the protective order by answering the call when A.H. called him from her new phone. (See *People v. Brenn* (2007) 152 Cal.App.4th 166, 181 ["Certainly, we can envision circumstances in which the person protected by an order seeks out the defendant and the defendant neither intends, nor does

9

anything, to facilitate contact with that person, yet contact still occurs. But such contact, being neither willful nor knowing on the part of the defendant, would not be a violation of the statute."].)[3]

Yet the evidence still does not compel a finding that these two counts were based on the same act. Salih willfully violated the protective order as soon as he knowingly came within 100 yards of A.H. Even if Salih had pulled up to the motel and then immediately driven away without committing the assault, he would still have been guilty of violating section 166, subdivision (c)(1). Thus, the real question before us is not whether the two counts were based on the same act, but whether they were part of an indivisible course of conduct incident to a single objective. (*Fuentes, supra,* 78 Cal.App.5th at p. 680.)

The People do not suggest that Salih had any objective for showing up at the motel in violation of the protective order *other* than to assault A.H. According to the evidence, Salih walked up to A.H. and immediately assaulted her, then got back into his car and left promptly after the assault. There is no evidence that Salih did or intended to do anything other than assault A.H. Because there is no substantial evidence of a separate criminal objective or intent for the two crimes, we conclude that the concurrent sentences violated section 654.

---

[3] The probation report contains a different version of what A.H. purportedly told the police. In this version, Salih was supposed to drop A.H.'s phone off in the motel lobby, but the phone was not there when she went to retrieve it. Salih then called her and told her he would be bringing the phone. Because the People do not rely on the probation report, and this version of events is not supported by the trial evidence, we decline to consider it in resolving the section 654 issue. Even if we did, however, we would still conclude that the phone call was incidental to the objective of the assault.

Salih argues that this sentencing error should be remedied by staying the 364-day concurrent sentence for count two. He does not contend that the matter should be remanded for the trial court to choose which sentence to stay. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 379 ["section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence"].) We take this as a tacit concession that the record clearly indicates the trial court would not have stayed the sentence for count one and executed only the misdemeanor sentence for count two. We agree with this assessment.[4] Accordingly, we will modify Salih's sentence to stay the 364-day concurrent sentence on count two.

---

[4] Salih had an extensive criminal record, including ten prior misdemeanors and seven felonies. These included violating a prior restraining order protecting a different victim, assaults on two other girlfriends, and another assault on a male victim who was dating one of Salih's ex-girlfriends. One of the prior assaults involved Salih repeatedly hitting a girlfriend in the face and causing injuries similar to those suffered by A.H. Salih also had another prior conviction for assaulting A.H. in June 2021, and there were police reports of several other assaults on A.H. that did not result in a conviction. Salih had served two prior prison terms, violated probation and parole multiple times, and was on parole at the time of the current offenses. The trial court could have imposed the low term for count one but instead imposed the four-year midterm, which was the maximum permissible term because no aggravating circumstances were alleged, admitted, or adjudicated. (§ 1170, subd. (b)(2).)

11

## DISPOSITION

The judgment is modified to stay the concurrent sentence on count two under section 654. The trial court is directed to prepare an amended abstract of judgment to reflect this modification and forward it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.