Filed 3/29/24  P. v. Ramirez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IVAN TAPIA RAMIREZ,<br><br>    Defendant and Appellant. | H051248<br>(Santa Cruz County<br>Super. Ct. No. F19139) |

Facing a murder charge for killing a teenager, defendant Ivan Tapia Ramirez pleaded no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a)[1]) and active participation in a criminal street gang (§ 186.22, subd. (a)) (hereafter street terrorism).  In accord with a plea agreement, the trial court sentenced Ramirez to an upper term of 11 years in prison for his voluntary manslaughter conviction and a concurrent upper term of three years for his street terrorism conviction.  In addition, the court ordered Ramirez to pay a restitution fine and two assessments, totaling $5,540.

On appeal, Ramirez contends the three-year term imposed for his street terrorism conviction should have been stayed under section 654.  He further contends the trial court

---

[1] Unspecified statutory references are to the Penal Code.

abused its discretion and violated his due process rights by imposing the restitution fine and assessments.

For the reasons explained below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *The Offense Conduct*[2]

On October 16, 2009, 16-year-old Tyler T. and other teenagers gathered in Santa Cruz, drank beer, and smoked marijuana. As the teens rode in a car, the driver shouted at two men who were standing on a street corner. The men responded with gestures. The driver stopped the car. The teens got out and approached the men. Some other men joined the confrontation, and a fight ensued.

As the teens ran back toward their car, someone tripped Tyler. Two or three men punched and kicked Tyler in his face, torso, and stomach as he lay on the ground. One of the attackers held a silver or chrome object while striking Tyler. Tyler was stabbed 17 times and died at the scene.

The police considered the scene to be within a "stronghold" of Brown Pride Santa Cruz, a Sureño street gang. A police officer opined that Ramirez was an active Sureño gang member at the time of the crime. The officer also opined that Tyler and some of the teenagers were associated with a Norteño gang called West Side Santa Cruz.

On the night of the killing, Ramirez visited a hospital for treatment of a fractured finger and lacerations on his hand. During the police investigation, one of the assailants told the police that Ramirez had participated in the attack on Tyler. In addition, the police found Ramirez's fingerprints on beer cans discovered at the scene.[3]

---

[2] Because Ramirez pleaded no contest to two offenses and the details of his crime are not relevant to the issues raised in this appeal, we include only a short summary of the offenses based on the preliminary hearing evidence.

[3] In his briefing, the Attorney General acknowledges that the preliminary hearing evidence "did not establish that [Ramirez] participated in any other felonious conduct on October 16, 2009," apart from that which was charged.

Almost 10 years after the killing, in 2019, the police arrested Ramirez in Mexico and brought him back to Santa Cruz County for prosecution.

B. *The Charges*

On April 12, 2023,[4] the Santa Cruz County District Attorney filed an amended information charging Ramirez with murder (§ 187, subd. (a); count 1), street terrorism (§ 186.22, subd. (a); count 2), and voluntary manslaughter (§ 192, subd. (a); count 3). As to count 1, the amended information alleged that the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1), (5)).

C. *Change of Plea Hearing*

On April 12, the parties appeared in court and the trial court said, "I'm told we have a resolution on this matter and what I understand it to be is that Mr. Ramirez will be pleading to [c]ounts 2 and 3 in the [a]mended [i]nformation. . . . [¶] The understanding is that there will be a total prison commitment of 11 years. [¶] And we will be getting a probation report and putting sentencing out but we're going to take the plea today. [¶] Count 1, the murder charge will be dismissed today."

The trial court asked Ramirez's defense counsel and the prosecutor if it had "missed" anything in describing the plea agreement. Defense counsel said he could not "think of anything," and the prosecutor said, "The only other thing, it's a technical thing, that the time on [c]ount 2 will be concurrent to the time on [c]ount 3. [¶] Other than that, nothing else." The following discussion ensued:

"[Court]: It's actually probably [section] 654, but might be stayed. I don't know. We'll see.

"[Prosecutor]: I don't think so.

---

[4] Unless otherwise indicated, all dates were in 2023.

"[Court]: You can do the research on that. [¶] Mr. Ramirez, do you understand what's going on, sir?

"[Ramirez]: Yeah.

"[Court]: Have you had enough time to talk to [defense counsel] and ask questions and get advice?

"[Ramirez]: Yeah."

Ramirez's defense counsel did not comment on the discussion about the concurrent sentence on count 2 and section 654.

Later in the plea colloquy, the trial court had the following exchange with Ramirez:

"[Court]: So the maximum penalty for the manslaughter charge is 11 years in state prison. [¶] You've agreed that we can impose that rather than bring in evidence of aggravating factors just because -- as part of this disposition. [¶] You understand that, sir?

"[Ramirez]: Yeah. Yeah.

"[Court]: You're agreeable to the 11 years, right?

"[Ramirez]: Yeah.

"[Court]: The maximum penalty for the . . . gang charge is three years in prison. But *that's going to run concurrent* so you're looking at 11 years.

"[Ramirez]: Okay." (Italics added.)

After the trial court found that Ramirez had knowingly, voluntarily, and intelligently waived his rights, Ramirez pleaded no contest to street terrorism (count 2) and voluntary manslaughter (count 3). Additionally, the court dismissed the murder charge (count 1) on the district attorney's motion in the "interest of justice, in light of the plea."

C. *Probation Officer's Report*

The probation officer's report prepared for Ramirez's sentencing described the plea agreement as including a "[s]tipulated sentence" of 11 years in prison. The report further stated that there were no section "654 [i]ssues" (boldface omitted) and suggested that the trial court impose the upper term of 11 years for count 3 plus three years concurrent for count 2.

The probation report noted Ramirez's current age as 36 years. Regarding Ramirez's mental health, the probation report stated that Ramirez "did not disclose any mental health concerns" and said he is "doing well." Similarly, regarding Ramirez's physical health, Ramirez "did not disclose any health concerns" to the probation officer and "report[ed] being active by exercising." Ramirez further stated that he had "completed his [g]eneral [e]ducation with [the] Santa Cruz County Office of Education" and came within one month of completing a nursing assistant program at Everest College (before he fled the country after the present crime).

Regarding Ramirez's employment status, the probation report said, "Mr. [Ramirez] indicated he does not have a source of income, as he has been housed in [jail] custody since February 27, 2019. Prior to his arrest in Mexico in relation to the underlying matter, Mr. Ramirez worked as a machinist for four years and [six] years with Western Union in customer service. [¶] Income: None [¶] Source: None [¶] Assets: None [¶] Debts: None."

The probation report recommended that Ramirez be ordered to pay a $5,400 restitution fine, a $5,400 parole revocation fine (to be stayed pending any revocation), an $80 court operations assessment, and a $60 court facilities assessment.

D. *Sentencing*

At Ramirez's sentencing hearing, the trial court noted that this case involved a "stipulated and agreed upon sentence." When the court asked defense counsel if he had "[a]ny input" on the sentence, counsel raised a question about presentence custody

5

credits. After the court said that it had calculated the conduct credits using a 15 percent multiplier, defense counsel objected and urged the court to use a 33 percent multiplier. The court did not accede to counsel's suggestion. Defense counsel made no comment on the probation report's recommendation for concurrent sentencing or the court's statement that the sentence had been agreed to.

The trial court sentenced Ramirez to the upper term of 11 years in prison for his manslaughter conviction (count 3). For the street terrorism conviction (count 2), the court sentenced Ramirez to a three-year concurrent upper term.

The trial court ordered Ramirez to pay a $5,400 restitution fine (§ 1202.4, subd. (b)). Defense counsel asked if the restitution fine would be stayed. The court responded, "No, the parole revocation restitution fine of [$]5,400 will stayed pending successful completion of parole." (See § 1202.45.) Thereafter, the following exchange occurred:

"[Defense counsel]: I do have a comment, Your Honor, that under [*People v. Dueñas* (2019) 30 Cal.App.5th 1157], he not be [*sic*] imposed that restitution fine. He has no ability to pay that.

"[Court]: They have work him in the prison [*sic*]. He'll pay it.

"[Defense counsel]: It should be noted because he doesn't have the ability to pay it.

"[Court]: I appreciate that.

"[Defense counsel]: So we object.

"[Court]: Duly noted. [¶] There's also $80 in court operations fees. [(§ 1465.8)] $60 in facility fees." (Gov. Code, § 70373.) Defense counsel did not object to these assessments.

In addition, the trial court ordered $7,495 in direct victim restitution (§ 1202.4, subd. (f)).

6

Ramirez appealed from the judgment "based on the sentence or other matters occurring after the plea that do not affect the validity of the plea." He did not request a certificate of probable cause.

## II. DISCUSSION

### A. *Section 654*

Ramirez contends the trial court erred under section 654 by imposing a concurrent three-year term on count 2. He claims the court, instead, should have stayed execution of that term. He further asserts that his claim is preserved for appellate review because it involves the imposition of an unauthorized sentence, and he did not waive his section 654 rights.

The Attorney General responds that Ramirez's claim is barred by California Rules of Court, rule 4.412(b) (rule 4.412(b)) because Ramirez agreed to a specified prison term and failed to assert his section 654 claim when the agreement was discussed in court.

#### 1. Legal Principles

Section 654 "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Assad* (2010) 189 Cal.App.4th 187, 200.) "[T]he purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)

In *People v. Mesa* (2012) 54 Cal.4th 191, our Supreme Court concluded that "section 654 precludes punishing a defendant for active participation in a criminal street gang (§ 186.22, subd. (a)) where the only evidence of such prohibited participation was the commission of a charged offense for which the defendant was also convicted and sentenced." (*People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1418, citing *Mesa*, at pp. 197–198.)

Even concurrent sentences on convictions subject to section 654 are prohibited; the sentence on one of the two applicable convictions must be imposed and then stayed. (*People v. Deloza* (1998) 18 Cal.4th 585, 591–592.)

7

Generally, the failure to object in the trial court under section 654 "does not forfeit the issue on appeal." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338, citing *People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 ["the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654"].)

However, the duty of a reviewing court to correct a section 654 error, even when the defendant failed to raise the issue in the trial court, is itself subject to an exception. "Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process. [Citations.] While failure to object is not an implicit waiver of section 654 rights, acceptance of the plea bargain [can be]. 'When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295 (*Hester*).)

California Rules of Court, rule 4.412(b) codifies "the case law rule that defendants are estopped from complaining of sentences to which they agreed." (*Hester*, *supra*, 22 Cal.4th at p. 295 [addressing the predecessor rule, Cal. Rules of Court, former rule 412(b)].) Rule 4.412(b) provides in pertinent part that "[b]y agreeing to a specified term in prison . . . personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record."

2. <u>Analysis</u>

There is no dispute that if we were to conclude Ramirez did not waive his rights under section 654, that section would apply, and his unstayed, concurrent sentence on count 2 would be improper. The parties, however, dispute whether Ramirez waived his section 654 rights.

Ramirez asserts that he did not waive his claim of section 654 error because his plea agreement "did not include a concurrent term on the gang count" (boldface omitted). He asserts further that "the trial court explicitly rejected any notion of a concurrent term on the gang count being a component of the plea agreement – and stated that whether to stay the gang count under section 654 would be a decision that the court would make at sentencing."

We are not persuaded. At the change of plea hearing, the prosecutor said Ramirez's sentence on count 2 would be concurrent to the sentence on count 3. The prosecutor also said, "I don't think so" when the trial court commented that the sentence was "probably [section] 654" and "I don't know. We'll see." Despite making this comment about the possible application of section 654, later in the hearing, the court told Ramirez that his three-year prison term on "the gang charge" is "*going to run concurrent*" (italics added). Ramirez replied by saying "Okay." Subsequently, the probation officer's report suggested a concurrent three-year term for count 2, reinforcing that Ramirez's plea deal had included a concurrent term.

Notwithstanding the trial court's comment about the potential application of section 654, the record here supports a finding that Ramirez waived his section 654 rights. The prosecutor emphasized that a concurrent sentence was proper under the negotiated plea agreement, the court told Ramirez during the plea colloquy that his prison term on count 2 would "run concurrent," and, consistently, the probation officer proposed concurrent sentencing. At no point during the plea hearing or sentencing did Ramirez's counsel state that imposition of a concurrent term on count 2 would be contrary to the

9

plea agreement he had negotiated with the prosecutor. Under these circumstances, we conclude Ramirez agreed to a specified sentence that included a concurrent term on count 2 and "abandon[ed] any claim that a component of the sentence violates section 654's prohibition of double punishment." (Cal. Rules of Court, rule 4.412(b); see *Hester*, *supra*, 22 Cal.4th at pp. 295–296.)

B. *Restitution Fine and Assessments*

Ramirez asserts that the trial court abused its discretion and violated his constitutional right to due process by arbitrarily and irrationally imposing a $5,400 restitution fine (§ 1202.4, subd. (b)), an $80 court operations assessment (§ 1465.8), and a $60 court facilities assessment (Gov. Code, § 70373). He claims that he is indigent and has no ability to pay the restitution fine and assessments. He further asserts "the mere fact that an inmate is serving a prison sentence does not in any way equate to an ability to earn prison wages." He asks this court to vacate the restitution fine and assessments due to his indigency and inability to pay.

The Attorney General responds that the restitution fine is not unconstitutionally excessive, and its imposition did not violate due process.[5] Regarding the two assessments, the Attorney General contends Ramirez forfeited any challenge to those assessments by failing to object to their imposition. Additionally, the Attorney General asserts that, regardless of forfeiture, the trial court did not abuse its discretion in imposing the restitution fine or assessments and any error was harmless because the record demonstrated Ramirez's ability to pay.

---

[5] Ramirez makes no argument in his opening brief that the restitution fine is unconstitutionally excessive. He also fails to reply to the Attorney General's assertion that the "proper analytical framework" for imposition of a restitution fine is the excessive fines clause of the Eighth Amendment. (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069–1071 (*Aviles*).) Under these circumstances, we do not address any issue regarding the application of the excessive fines clause to the present case.

1. <u>Legal Principles</u>

Section 1202.4, subdivision (d) provides that in setting a restitution fine above the $300 minimum for a felony conviction, "the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime. . . . Consideration of a defendant's inability to pay may include the defendant's future earning capacity. A defendant shall bear the burden of demonstrating the defendant's inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required."

"In *Dueñas*, the Court of Appeal reversed an order imposing the court operations assessment and the court facilities assessment after concluding that it was 'fundamentally unfair' and violated the defendant's due process rights under the federal and California Constitutions to impose these assessments without determining the defendant's ability to pay these amounts. [Citation.] The court also concluded that the execution of a [minimum] restitution fine under section 1202.4 'must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine.' " (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 224 (*Ramirez*).)

Panels of this court and other Courts of Appeal have reached differing conclusions on whether *Dueñas* was correctly decided. (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 325–329, review granted Nov. 26, 2019, S258946; *People v. Santos* (2019) 38 Cal.App.5th 923, 933–934 (*Santos*); *People v. Adams* (2020) 44 Cal.App.5th 828, 831–832; *People v. Petri* (2020) 45 Cal.App.5th 82, 92.)

"The California Supreme Court has granted review of two related issues in light of *Dueñas*: 1) Must a court consider a defendant's ability to pay before imposing or

executing fines, fees, and assessments; and 2) If so, which party bears the burden of proof regarding defendant's inability to pay.  (*People v. Kopp* (2019) 38 Cal.App.5th 47, 95, . . ., review granted Nov. 13, 2019, S257844.)"  (*Ramirez, supra*, 98 Cal.App.5th at p. 224, fn. 8.)

"[F]orfeiture applies where a defendant fails to object to the imposition of fines and fees at sentencing proceedings that took place after *Dueñas*."  (*Ramirez, supra*, 98 Cal.App.5th at p. 225, citing *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.)  Further, courts have held that the defendant bears the burden not only to raise the issue of inability to pay a fine or assessment but also to "present evidence of his or her inability to pay the amounts.  . . .  The trial court then must consider all relevant factors in determining whether the defendant is able to pay the fines, fees and assessments to be imposed.  Those factors may include, but are not limited to, potential prison pay during the period of incarceration to be served by the defendant."  (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490; *Santos, supra*, 38 Cal.App.5th at p. 934 ["[I]t is the defendant's burden to demonstrate an inability to pay, not the prosecution's burden to show the defendant *can* pay."].)

A trial court's determination regarding the defendant's ability to pay a restitution fine or assessments is reviewed for abuse of discretion.  (See *People v. Potts* (2019) 6 Cal.5th 1012, 1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1393.)  A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### 2.  Analysis

As for whether Ramirez's current challenge to the two assessments was forfeited by his failure to object at sentencing, we conclude there was no forfeiture under the present circumstances.  Although Ramirez's defense counsel did not voice any objection after the trial court imposed the court operations assessment and court facilities

12

assessment, counsel had already objected to the $5,400 restitution fine based on Ramirez's inability to pay. Given that the court rejected counsel's inability-to-pay objection to the restitution fine, it would have been reasonable for counsel to conclude that objecting further to the lower-cost assessments on the same ground was futile and would have been rejected. (See *People v. Hill* (1998) 17 Cal.4th 800, 820; cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)

Regarding the merits of Ramirez's challenge to the restitution fine and assessments, Ramirez focuses his argument on the trial court's statement about his ability to work in prison. He asserts that the court's reliance on his "theoretical ability to earn prison wages without any sort of evidence about [his] eligibility for in-custody employment or the availability of employment" amounts to "false assumptions" and is arbitrary and irrational. He points to an apparent "90 [percent] unemployment rate in California prisons" and claims that even if he can secure a job, it will be impossible for him to pay off the restitution fine and assessments "by the time he is released from prison." In turn, citing *Dueñas*, Ramirez claims that the court's arbitrary and irrational decision violates his rights to due process.

Assuming arguendo that *Dueñas* was correctly decided, Ramirez has not persuaded us that the trial court abused its discretion and violated due process by finding he would be able to pay the restitution fine and assessments. A court may properly consider potential prison wages in determining an ability to pay fines and assessments. (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1101; *Aviles*, *supra*, 39 Cal.App.5th at p. 1077.) Further, a court is not precluded from considering other relevant factors, including earning capacity after release from prison. (See *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229; *Aviles*, at p. 1076; *Santos*, *supra*, 38 Cal.App.5th at p. 934.) Because a trial court is not required to make express findings concerning a defendant's ability to pay a restitution fine, the absence of express findings does not demonstrate it failed to consider relevant factors. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1043;

13

§ 1202.4, subd. (d); see also Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].)

The record supports the trial court's determination that Ramirez has an ability to pay the $5,540 imposed on him. As documented by the probation officer's report (see pt. I.C., *ante*), Ramirez is a relatively young person. He successfully completed his general education, attended college, and held jobs for several years prior to his arrest in 2019. He reported to the probation officer that he suffers no physical or mental impairments and that he has no outstanding debts. In addition, Ramirez presented no evidence to the trial court showing that he will be unable to work in the future. In fact, Ramirez told the probation officer that "he would like to continue supporting and providing for his family upon completion of his sentence."

We cannot conclude based on this record that the trial court abused its discretion or violated due process in determining that Ramirez had an ability to pay the restitution fine and assessments. Therefore, Ramirez has not demonstrated error in the trial court's imposition of the restitution fine, court operations assessment, and court facilities assessment.

## III.  DISPOSITION

The judgment is affirmed.

_____
                         Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Bromberg, J.

**H051248**
*People v. Ramirez*