Filed 4/2/25  P. v. Plant CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>AMARANTHA PLANT,<br><br>　　　Defendant and Appellant. | B332968<br><br>(Los Angeles County<br>Super. Ct. No. LA095782) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge.  Affirmed as modified.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————

Amarantha Plant fraudulently used another's driver's license and social security number to obtain financing and purchase a car from a dealership. The prosecution presented evidence at trial that Plant maintained possession of that driver's license and presented it to law enforcement as her own months later when she was pulled over in the stolen car. She was convicted of three offenses, (1) possession of personal identifying information with intent to defraud (identity theft), after a prior identity theft conviction (Pen. Code,[1] § 530.5, subd. (c)(2)), (2) false personation of another in connection with a written instrument (§ 529, subd. (a)(2)), and (3) grand theft of an automobile (§ 487, subd. (d)(1)). The trial court sentenced her to two years in county jail for the grand theft, plus a consecutive term of eight months for the identity theft with a prior. Pursuant to section 654, the court stayed the sentence for the false personation offense.

Plant contends the trial court violated section 654 when it imposed multiple punishments for the identity theft and the grand theft. She argues the two offenses arose from an indivisible course of conduct with a single objective—to obtain the vehicle by false pretenses—and the court should have stayed the punishment for the identity theft. We reject this contention, concluding the court did not err in imposing multiple punishments based on facts presented at trial showing Plant continued to use the victim's personal identifying information (the driver's license) months after she committed the grand theft.

Plant also contends, the Attorney General concedes, and we agree that she is entitled to additional presentence custody

---

[1] Undesignated statutory references are to the Penal Code.

2

credit.  We modify the judgment accordingly and as so modified affirm.

## BACKGROUND

The information filed against Plant alleged that the three charged offenses described above occurred on or about January 31, 2021.  The information also alleged that Plant had three prior identity theft convictions under section 530.5.

### A.    Evidence Presented at Trial

Sometime in fall 2020, Christine Villegas, the identity theft victim, renewed her driver's license online.  By early December 2020, she had not received the new driver's license in the mail and wondered why it was late.  In January 2021, she expected to receive her 2020 form W-2, Wage and Tax Statement by mail, but she did not receive that either.

In February 2021, Bank of America sent Villegas a loan document related to the purchase of a preowned Dodge Challenger from a Nissan dealership located on Van Nuys Boulevard in Sherman Oaks.  She contacted the dealership to report that she had not purchased the car.  As reflected in the retail installment sale contract executed on January 31, 2021, the price of the car was $28,900, and the repayment obligation required 72 monthly payments of $589.26.  Villegas confirmed during her trial testimony that the driver's license and social security numbers listed on the sale contract were hers but the signatures were not.  After speaking with Villegas in February

3

2021, the manager of the Nissan dealership filed a police report regarding the vehicle theft.[2]

On March 25, 2021, Laguna Beach Police Department Corporal Thomas McGuire initiated a traffic stop of a Dodge Challenger. At trial, he identified Plant as the driver of the car. He asked her for her driver's license, and she provided one with Christine Villegas's name, photo, and other identifying information on it. Next, he asked Plant for the vehicle's registration and proof of insurance, which she was unable to produce. When other officers arrived, he asked her to exit the car, and she was detained.

During an exchange between Corporal McGuire and Plant recorded on another officer's body worn camera,[3] McGuire called Plant "Christine," and Plant responded to that name. McGuire explained that he pulled her over because of an issue with the car's license plate. He asked her questions to ascertain if she was the lawful owner of the car. She told him she had purchased the car from "Anytime Auto" on Van Nuys Boulevard for $28,000, and she was required to make 72 monthly payments of $699. She insisted she had paperwork for the car but represented that it

_____

[2] Ali Chahin, the manager, was at the Nissan dealership on January 31, 2021, and briefly interacted with the woman who purchased the Dodge Challenger in Villegas's name. The woman wore a mask. At trial, Chahin provided a general description of the woman, and the prosecutor argued the description was consistent with Plant. Villegas testified that she was not acquainted with Plant.

[3] The prosecution introduced, and the trial court admitted into evidence, audio/video recordings from the officer's body worn camera and written transcripts of the recordings. The transcripts are included in the record before us.

4

was at home. The vehicle identification number of the Dodge Challenger Plant was driving on March 25, 2021, as recorded by McGuire during the traffic stop, matched the vehicle identification number of the Dodge Challenger purchased in Villegas's name on January 31, 2021.

At some point during their exchange, Corporal McGuire became aware that Plant was not the person shown in the photo on the driver's license she had provided. She conceded the driver's license was not hers but could not explain why she had given it to him. During the course of the stop, officers did not find a driver's license in Plant's name, but they recovered a second driver's license in a different woman's name.[4]

### B.    Verdicts and Sentencing

The jury found Plant guilty of possession of personal identifying information with intent to defraud (identity theft; count 1), false personation for a written instrument (the paperwork executed in Villegas's name to obtain the car; count 2), and grand theft of an automobile (count 3). Plant waived her right to a jury trial on the priors and admitted three prior identify theft (§ 530.5) convictions.[5]

---

[4] In the defense case, Plant presented evidence and argued that she was working on the day the Dodge Challenger was purchased in Villegas's name. Plant's unsuccessful alibi defense is not relevant to the contentions she raises on appeal, and we need not discuss it further.

[5] Plant was charged in count 1 with possession of personal identifying information with intent to defraud *after a prior section 530.5 conviction,* a violation of section 530.5, subdivision (c)(2).

5

At the sentencing hearing, the parties and the trial court discussed whether the sentence on any of the counts should be stayed under section 654. The prosecutor urged the court to impose multiple punishments for the identity theft conviction in count 1 and the false personation conviction in count 2, arguing the two offenses were temporally distinct because Plant had an opportunity to reflect upon her actions between the time she took possession of Villegas's personal identifying information and the time she used that information at the dealership.

The defense argued multiple punishments were precluded by section 654 because Plant's "objective intent was clear and singular, the taking of a car in another's name." The defense also argued there was no evidence presented at trial indicating when Plant took possession of Villegas's personal identifying information, so it was not possible to determine if Plant had an opportunity "to contemplate the different uses [of the information] or not using it" before she committed the false personation and grand theft offenses.

The trial court concluded multiple punishments on count 1 (identity theft) and count 3 (grand theft) would not violate section 654, based on the duration of Plant's possession of Villegas's driver's license. The court noted that Plant fraudulently obtained the car with Villegas's driver's license on January 31, 2021, and around two months later when she was detained at the traffic stop, she still possessed Villegas's driver's license (which she presented to the police officer as her own).[6] The court found the

---

[6] The court also stated its understanding that Plant's possession of Villegas's personal identifying information "spanned over four months," from sometime in November 2020 until the March 25, 2021 traffic stop, and that she had obtained

continued possession created a new risk of harm, that Plant would use the driver's license again with intent to defraud. The court also noted there were three victims of Plant's fraud: Villegas, the Nissan dealership, and Bank of America.

The court sentenced Plant to the middle term of two years for the grand theft, plus a consecutive term of eight months (one-third the middle term) for the identity theft, to be served in county jail. The court selected the middle term of two years for the false personation offense and stayed the punishment pursuant to section 654. In consultation with defense counsel, the court awarded Plant 32 days of presentence custody credit, 16 days of actual credit and 16 days of conduct credit.

## DISCUSSION

### A. The Trial Court Did Not Err in Imposing Multiple Punishments

Plant contends the trial court violated section 654 when it imposed multiple punishments for count 1 (identity theft) and count 3 (grand theft). She argues the court should have stayed the punishment on count 1 because "the possession of personal identifying information with intent to defraud was part of the same continuous course of conduct with the single objective of successfully committing grand theft by false pretense."

the information a couple months before she used it on January 31, 2021 at the dealership. As the defense pointed out, however, there was no evidence presented at trial indicating when or how Plant obtained Villegas's information. We cannot infer from the record before us that Plant obtained the driver's license at the time it went missing from Villegas's mailbox, rather than at some later time (e.g., immediately before she entered the dealership).

7

### 1. *The two offenses at issue*

Plant was convicted of identity theft under section 530.5, subdivision (c)(2), which applies to "[e]very person who, with intent to defraud, acquires or retains possession of the personal identifying information . . . of another person, and who has previously been convicted of a violation of this section . . . ." As the trial court instructed the jury, "A person intends to defraud if he or she intends to deceive another person in order to cause a loss of something of value, or to cause damage to a legal, financial, or property right. [¶] Personal identifying information means driver's license or an equivalent form of identification." (CALCRIM No. 2041, italics omitted.)

Plant was convicted of grand theft of an automobile under a theory of false pretenses. The trial court instructed the jury that the elements of the crime are: "1. The defendant knowingly and intentionally deceived an automobile owner or the owner's agent by false or fraudulent representation or pretense; [¶] 2. The defendant did so intending to persuade the owner or the owner's agent to let the defendant take possession and ownership of the automobile; [¶] AND [¶] 3. The owner or the owner's agent let the defendant take possession and ownership of the automobile because the owner or the owner's agent relied on the representation or pretense." (CALCRIM No. 1804.)

### 2. *Section 654 and standard of review*

Section 654, subdivision (a), provides in pertinent part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Thus, "If a single action or course of conduct by a defendant violates multiple laws, 'the

distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense' " and must stay the sentence for the others. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673; *People v. Deloza* (1998) 18 Cal.4th 585, 591-592.)

Section 654's purpose is to ensure a defendant is punished in a manner commensurate with culpability. (*People v. Harrison* (1989) 48 Cal.3d 321, 335; *People v. Gaynor* (2019) 42 Cal.App.5th 794, 800.) To that end, it "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) Whether a course of criminal conduct is divisible depends on the intent and objective of the actor. (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) If a "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he [or she] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Harrison*, at p. 335.) Multiple punishments are also permissible where a course of criminal conduct is divisible in time and " 'the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken' " and creating a " 'new risk of harm.' " (*Gaynor*, at pp. 800, 804; *People v. Peyton* (2014) 229 Cal.App.4th 1063, 1080 [multiple punishments for receiving stolen property and identity theft did not violate section 654 where the defendant "took possession of [a] stolen ATM card and had the opportunity for reflection. He formed a new criminal intent before he used the victim's personal

9

identification number to withdraw money from the ATM" around two hours later].)[7]

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113 (*DeVaughn*).)  Generally, "a trial court may base its decision under section 654 on any of the facts that are in evidence at trial," even those that may not have been the basis for the jury's verdicts.  (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340 (*McCoy*), italics omitted.)  We review the trial court's express or implied findings regarding the defendant's intent and objective under the substantial evidence standard of review. (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.)  To that end, we "review the trial court's determination in the light most favorable to the respondent and presume the existence of every

---

[7] There is a "multiple victim" exception to section 654, which applies where a defendant "commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1023.)  "Where, however, the offenses arising out of the same transaction are not crimes of violence but involve crimes against property interests of several persons, [the California Supreme Court] has recognized that only single punishment is permissible." (*People v. Bauer* (1969) 1 Cal.3d 368, 378.)  In imposing multiple punishments on Plant, the trial court noted there were multiple victims of her crimes: Villegas, the Nissan dealership, and Bank of America.  We need not address this issue further because we uphold the trial court's decision to impose multiple punishments on other grounds explained below.

fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

### 3. *Analysis*

Plant argues she had a single intent and objective in committing the identity theft and the grand theft: "to use Villegas'[s] driver's license to obtain the Dodge Challenger with false pretense." She likens this case to *People v. Casica* (2014) 223 Cal.App.4th 320, where the Court of Appeal concluded the trial court erred in imposing punishments for three counts of forgery and three counts of commercial burglary (cashing forged checks). The appellate court agreed with the defendant's argument that although she "committed the forgeries on separate dates from the burglaries," the trial court should have stayed the sentence on the forgery counts under section 654 because she "committed each count of forgery and burglary together, as a single course of conduct, with the goal of obtaining money via the forged checks." (*Id*. at p. 324.) The Court of Appeal explained, "There would be little point in forging the checks without cashing them, and cashing the checks would be impossible without the forgeries. Thus, it is logical to conclude that defendant only harbored one intent—to obtain money from [the victim's] account. Speculation about any other intent harbored by defendant is just that, speculation, and therefore not supported by substantial evidence." (*Ibid*.; see also *People v. Curtin* (1994) 22 Cal.App.4th 528, 532 [the People conceded that the defendant's "sentence for forgery should have been stayed under section 654, because the forgery and burglary were part of the same indivisible transaction, both committed for a single criminal objective, to cash the check"].)

Plant's position might be well taken if the evidence presented at her trial showed only that she took possession of the driver's license (at an unknown time, possibly immediately before entering the dealership) and used it to obtain the Dodge Challenger by false pretenses. But here there was more. Plant did not discard the driver's license after she obtained the car. Instead, Plant maintained possession of Villegas's driver's license, and around two months after the grand theft she used the license again. This time, she presented it to a police officer as her own during a traffic stop, potentially exposing Villegas to further legal consequences. As the trial court found, Plant's continued possession and use of the driver's license after the grand theft created a new risk of harm to Villegas. Substantial evidence supports the court's finding that Plant's intent and objective in possessing the driver's license extended beyond merely accomplishing the grand theft. Thus, we conclude the court imposed punishment in a manner commensurate with Plant's culpability, consistent with the purpose of section 654.

Plant urges us to ignore the evidence of her use of the driver's license during the March 25, 2021 traffic stop in determining whether the trial court erred in imposing multiple punishments. She argues that the information filed against her alleged all three offenses were committed on January 31, 2021 (the date she obtained the car from the dealership); the prosecutor argued during closing argument that the three offenses occurred on January 31, 2021; and "there was no substantial evidence that the jury convicted [her] on count 1 based on the March 25 incident." As we explained above, however, "a trial court may base its decision under section 654 on any of the facts that are in evidence at trial," even those that may

12

not have been the basis for the jury's verdicts. (*McCoy, supra*, 208 Cal.App.4th at p. 1340, italics omitted.) In imposing multiple punishments, the court here relied on Plant's use of Villegas's driver's license during the traffic stop, stating these "additional facts . . . were proven, to [the court's] satisfaction." We agree with the trial court that section 654 does not bar multiple punishments based on these facts.

### B.    Presentence Custody Credit

Plant contends and the Attorney General agrees that she is entitled to 49 days of presentence custody credit, rather than the 32 days the trial court awarded.

According to the probation report, Plant was arrested on November 23, 2021, and released on her own recognizance on December 8, 2021, which amounts to 16 days of actual credit.[8] After the jury's verdicts were read on August 2, 2023, she was remanded to custody. She was sentenced on August 10, 2023, so she is entitled to nine days of actual credit for that period as the trial court correctly found. Thus, Plant's actual custody credit is 25 days.

As the parties agree, to calculate Plant's presentence conduct credit, based on an odd number of days served (25), we divide the actual custody credit by two (which equals 12.5), round down to a whole number (12), and multiply by two (24). (See *People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358-1362.)

---

[8] At the sentencing hearing, however, defense counsel incorrectly represented that Plant was released on November 29, 2021, and was entitled to seven days of actual credit for that period.

Thus, Plant is entitled to 49 days of presentence custody credit, 25 days of actual credit plus 24 days of conduct credit.

## DISPOSITION

The judgment is modified to reflect 25 days of actual credit and 24 days of conduct credit, for a total of 49 days of presentence custody credit. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

14